## DETROIT LUBRICATOR CO. *v.* LUNKENHEIMER.

*(Circuit Court, E. D. Michigan.    November 29, 1886.)*

PATENTS FOR INVENTIONS—ANTICIPATION—PUBLIC USE.
     Letters patent No. 196,650, issued to George H. Flower for an improvement in lubricators, held to be invalid by reason of anticipation, and also of prior use two years before application made.

In Equity.

This was a bill in equity for the infringement of letters patent No. 196,650, issued to George H. Flower, October 30, 1877, for an improvement in lubricators.    Application for this patent was filed on the third day of September, 1877.    The object of the improvement, as stated by the patentee, was "to obtain a perfectly regular, and at the same time a sure, flow of the oil into the cylinder and valves."    This was attained by forcing the oil from the oil-cup or reservoir, through a water tube, in visible drops.    The oil in the reservoir was displaced by condensed steam entering the reservoir in drops, and displacing an equal amount of oil, which flowed out towards the bottom of the water tube, being there delivered in drops, rising through the water, and constituting what is termed a "sight-feed."

On the twenty-sixth day of June, 1886, an interlocutory decree was entered upon the pleadings and testimony then before the court, affirming the validity of the patent, the infringement by the defendant, and ordering the usual accounting of profits and damages.    Very soon thereafter the defendant, upon affidavits showing newly-discovered evidence of an anticipatory devise, was permitted to amend his answer, and take the newly-discovered testimony in the ordinary method.    The case again came before the court upon a rehearing.    The defenses set up in the pleadings, and in support of which this testimony was offered, were (1) that Flower was not the first inventor of the improvement described in the patent sued upon; and (2) that said improvement was in public use in this country for more than two years prior to his application for such patent.

*W. W. Leggett,* for plaintiff.

*Stem & Peck,* for defendant.

BROWN, J.    The testimony offered by the defendant in this case tends to show that in the early part of May, 1875, and more than two years before plaintiff applied for his patent, one Clark Cornwell, a large paper and pulp manufacturer, caused to be made and put upon the engine of a pulp-mill at Jackson, Michigan, a sight-feed lubricator, embodying the invention and improvements claimed in the Flower patent, and differing from it only in the fact that the condensing pipe was carried down the outside instead of the inside of the reservoir, entering it at the bottom, but delivering the water at the same point as in the plaintiff's device, as the lubricators were actually manufactured by him, though

not at the point indicated in his patent. It is conceded, however, that this difference is immaterial, and that the device embodies the substance of plaintiff's invention. It seems that Cornwell, finding the oil-cups used by him unsatisfactory in their operation, and having heard of an oil-cup invented in California in which the water was passed through oil in visible drops within a glass tube, thereby forcing the oil to the engine, conceived the idea of applying a similar device to his own engine. It did not work satisfactorily, however, because, on account of the density of the oil, he was unable to see the drops of water passing down through the oil. He then took it off the engine, and changed the mode of operation, by filling the glass gauge with water, and forcing the oil to the bottom of the gauge or water tube, thereby allowing it to pass upward in drops, through the water, to the engine. The original lubricator manufactured by him was produced in court, and his testimony, supported by that of Maloney, McAlvay, Root, and several others, who saw it in use at the Cornwell mill, establishes to our satisfaction that this lubricator was in successful operation upon the Cornwell engine from about the middle of May, 1885, and continued to be the only lubricator used upon said engine until two or three years ago, when, on account of leakage, it was displaced, and a new one purchased in its stead. It is true that this lubricator at first did not work to their entire satisfaction. As the oil was delivered at the bottom of the water tube it was apt to creep up the tube, along the side of the glass, smearing the glass in such a way that the ascent of the oil could not be readily seen. This was first remedied by putting a perforated plate at the bottom of the glass, with a small hole in the center through which the oil was delivered. It still, however, showed a tendency to follow the surface of the plate until it reached the side of the tube, when the same difficulty was encountered as before. This difficulty was practically remedied, however, by punching a hole in the plate from the under side, creating a small cone or bur upon the upper side of the plate, which gave direction to the oil as it passed through the hole, and caused it to rise in visible drops through the center of the tube. These operations all seem to have been effected within a few days after the lubricator was first put in, and by the middle of May, 1885; and in this shape it was used for more than a year, when the glass tube was shortened on account of its liability to break, and a small cone was finally inserted at the bottom of the glass tube in the place of the hole or perforation. This was somewhat more successful in its operation than the perforated hole, and now seems to be universally used in lubricators of this pattern.

The testimony, however, satisfies us that the lubricator was a successful working machine from the time the perforated plate was inserted, and that it embodied all the essential features of the plaintiff's patent. The funnel or cone placed at the bottom of the water tube, although mentioned in plaintiff's specifications as the orifice, *r*, and shown in his drawing as a small cone rising in the center of the water tube at the bottom, is not alluded to in his claim, which is simply for "a lubricator consisting of a condensing tube, an oil chamber, and a water tube, con-

nected together and operated essentially as described, and for the purposes set forth." There cannot be a doubt that the Cornwell device would have been a clear infringement of plaintiff's patent had the cone not been used, and that it was a successful working device from, the middle of May, 1885, is established to our satisfaction. This device, having been in public use for more than two years before the plaintiff applied for his patent, constitutes a complete defense. Rev. St. § 4886.

But we think the second defense is also established, and that, upon the testimony, Cornwell must be considered the prior inventor of the sight-feed lubricator. It is true that Flower claims to have conceived his device as early as 1872, and to have put it in practical operation as early as 1874, but his testimony is far from satisfactory upon this point. His story is that he conceived his invention while observing the bad action of an engine at Au Sable, Michigan, on St. Patrick's day, March 17, 1872, as he was about leaving for Chicago. He became time-keeper for the Union Brass Company, in Chicago, in the summer of 1872, engaged as their foreman in the fall of that year, and took charge of their engine, as engineer, March 17, 1873. In support of his claim, he exhibits a sketch of a lubricator in a book upon the steam-engine, which he claims was made some time between February 18, 1873, and the fall of 1874. The sketch proves nothing, of itself, however, as it may have been made at any time after the book was published. Before making this sketch, he made sundry experiments with a glass tube, bent in the form of a siphon, filled with tallow, and immersed in a pail of water. His next step towards developing the invention was making a cup embodying substantially the features of his invention, which was, when completed, attached to a pump at the brass-works in Chicago. He cannot fix the date of this, but is confident it was before October, 1874. This, it appears, did not work satisfactorily. His next step was to make a lubricator very closely after the drawing annexed to his patent, which he claims was put on a steam-engine and operated perfectly before the seventeenth of March, 1875, at which time he regarded his experimenting as finished. The substance of his testimony is that he conceived his invention on St. Patrick's day, 1872; became engineer of the brass-works at Chicago, St. Patrick's day, 1873; and perfected his invention St. Patrick's day, 1875. This patriotic coincidence of dates contains, at least, a suggestion of improbabilities.

The testimony he offers in support of his own statement is not of a satisfactory description. That of Mr. De Graff is entirely hearsay, and incompetent. He visited Chicago in October, 1877, after the patent had been applied for; noticed the lubricator on the engine; when Flower told him it was his invention, and that he had been working on it for two or three years. It is scarcely necessary to say that this testimony must be left out of consideration. The only other testimony is that of one Doyle, who swears that, in the spring of 1875, Flower took him out to the Union Brass Company, where he was working as engineer, showed him a lubricator, and called his attention particularly to the drops of oil rising through the glass tube. He admits, however, that he knew nothing

of the inside workings of the lubricator, and he might easily have been mistaken either as to the time of his visit or as to the fact to which he testifies.

In contradiction of his statement, it is shown that Mr. Flower had formerly been involved in an interference in the patent-office with one Parshall; and that, under a rule of the patent-office requiring each party to an interference to file a preliminary statement, under oath, showing the date of his original conception of the invention, of the making of a drawing and of a model, and of its disclosure to others, of its reduction to practice, and of the extent of its issue, he had filed an affidavit, in 1880, stating that his first conception of the subject-matter of his invention, as shown and described in his patent, was previous to June, 1876, but the exact date he was unable at that time to give. His affidavit continues in the following language:

"On or about June 23, 1876, I commenced to make and finished a lubricator, for the purpose of ascertaining if oil would pass up through water; and, the experiment proving satisfactory, a day or two thereafter I made a lubricator in all material respects the same as that shown and described in my said patent No. 196,650, now in interference. This lubricator was put in use by me, and found to work satisfactorily, and is in my possession at the present time. * * * The lubricator, as conceived by me in June, 1876, and carried out by me in the working lubricator made by me in June, 1876, and used and illustrated in the drawings made by me, and embodied in the patterns made by me, is the same substantially as the device shown and described in my said patent."

We find it impossible to reconcile this with his present testimony. His only explanation is that he told his attorney and associates that he had invented it a good while before, but his partner said that was far enough back, and, as the preliminary statement was hastily prepared, it was so left without further investigation. Knowing, however, that the date of his conception of the invention, and of his putting such conception into practice, was of the utmost importance, and that he would be held strictly in his proof to the dates set up in his statement, it is incredible that he should have stated, or that his attorney should have allowed him to state, that he conceived his invention more than four years after he now claims to have conceived it, and nearly two years after he now claims to have had a sight-feed lubricator in successful operation in Chicago. It is equally incredible that he should have waited for three years after his invention was in successful operation before applying for a patent. Indeed, we incline to the opinion that his use of it in October, 1874, or at least in the spring of 1875, was such a public use of it two years before he applied for this patent as would render it void. We are forced to conclude, in this connection, that Flower, finding himself confronted with an antecedent device, resorted to the familiar expedient of antedating his own invention to meet the exigencies of the case. In the examination of many patent causes, we have seldom found that the supply of this class of testimony was inadequate to the demand. The chief difficulty in his case is that the same testimony which proves Flower to be the first inventor also shows his invention to have been in public

use more than two years before he applied for his patent. In either aspect of the case, the defense has been established to our satisfaction, and the bill must be dismissed, with costs.

On rehearing, before JACKSON and BROWN, JJ., this case was affirmed.