### KLEIN v. CITY OF SEATTLE.

(Circuit Court, D. Washington, N. D.   August 31, 1894.)

1. PATENTS—INVENTION—ELECTRIC INSULATOR PINS.
    The Klein patent No. 297,699, for a pin for holding insulators supporting electric light wires, which consists of a combination of the pin proper, of iron or steel, with an enlarged head of lead or other soft metal molded thereon, and firmly secured by first notching the pin end, is void for want of invention.

2. SAME—PLEADING—DEFENSE OF PRIOR USE.
    The defense of prior use should be pleaded, or notice should be given before trial, specifying when, where, and by whom the article was made.

This was a suit by John M. Klein against the city of Seattle for infringement of a patent.

A. Byers, for plaintiff.

W. T. Scott and Frank A. Steele, for defendant.

HANFORD, District Judge (orally).   This is an action brought by the plaintiff against the city to recover damages for infringement of letters patent No. 297,699, granted to the plaintiff for an improvement in pins for holding insulators supporting electric wires.   What is claimed by the application, and to be considered as protected by the patent, is a pin of iron or steel, of suitable size and any length, with an enlarged head of lead, or any soft metal, upon it, with a thread to fit the inside of glass insulators, which are made with a spiral groove for screwing onto a screw head. The heads are cast upon the ends of pins by running molten lead into a mold while the end of a pin is held therein.   A firm union of the lead to the iron is secured by notching the pin end, or making it rough with a chisel.   These pins are designed to be used in connection with glass insulators in common use.   No particular kind of insulator is required, and the insulator is not part of the combination which the plaintiff claims as his invention.   The kind of pins most commonly used are wooden pins with a thread on the end to hold the insulator; but wooden pins are objectionable because they cannot be made of sufficient strength without being of a size that unfits them for use in many places.   For instance, they cannot be set into arms upon telegraph and telephone poles without requiring either very large arms, or making the arms in common use too weak.   In all places where the wire makes an angle, a wooden pin must be of considerable thickness to be strong enough to support the wire and bear the strain that is necessary. Iron pins were in use for such purposes a long time before the plaintiff in this case claims to have conceived the idea of this invention, and, in order to use them in connection with glass insulators, of course some material had to be used to fill the cavity of the insulator, and accordingly a filling of wood, of canvas coated with white lead, and all the different kinds of cement were used.   Cement in a plastic state was run into the cavity in which the iron pins were set, and exactly the same method of making the iron pins available was in use before this invention, except

that other materials were used instead of lead. It is also shown by the testimony that lead was used in a different manner. Instead of being molded in proper form, sheet lead was wrapped upon the end of the pin. The evidence shows—and in fact it is a matter of general knowledge—that soft metal has been in common use to fill cavities and unite metals or hard substances for a very long time, so that there is nothing new in the use of this kind of material for this purpose. The manner of making an iron pin adhere to soft metal by notching it or roughing it is not new. There is no invention in that, for that principle has been long applied in many ways. In principle, it is the same as the key commonly used for securing a wheel upon a central shaft, so that both will make the same revolutions. Now, all that can be claimed as the invention in this case is the combination consisting of the use of iron in place of wood for a pin, and lead in place of rags, wood, or cement for a filling, and the process of making a firm union of the lead head and the iron pin; and it is my opinion that there is nothing in this that amounts to an invention. It seems to me that any person of intelligence directed to take an iron pin and a glass insulator, and insert one in the other, and make a firm union between the two, would discover that this was obviously a good method for doing that very thing.

The plaintiff has cited several cases to show that, in matters of similar character, the fact that an improvement is found to be of such general utility as to cause the improved article to go immediately into general use, and supplant all other methods, is proof of an invention. But the proof here is that wooden pins are still in use, and this new contrivance has only been used to a limited extent, and that there is no such special utility in it that it has supplanted the old methods. The policy of the law is to reward inventors by giving them, for a limited time, the fruit of their productions. But mere improvements produced by the use, in a usual manner of previously known instruments, from materials in general use, without application of any new principle, do not entitle their authors to monopolies. Every-day work in shops and on farms makes necessity for many contrivances; and when a farmer fixes up a broken harness by his own peculiar method, or makes an improvement in the operation of agricultural implements, or when a mechanic adapts his tools to the creation of an article required to suit the ideas of a customer, the results are not patentable inventions. The patent laws cannot be so construed as to restrict ingenuity in the common employment of the people without becoming intolerably burdensome, rather than beneficial. Hollister v. Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717.

In my consideration of the testimony in this case I have read the depositions, and I have concluded to overrule one and all of the objections that are noted. The other defenses in this case are, in my opinion, unavailable under the pleadings. I think the different defenses that have been discussed in this case should have been set forth fully and with greater particularity in the answer, to enable the defendant to take any advantage of them.

For instance, that the patent was anticipated by actual use is something that should have been pleaded, or, before the trial, notice should have been given, specifying when and by whom and where the patented article was in use. The rules for defending against patents on this ground are somewhat rigid, but they are just, and it is my duty to enforce them. I shall find against the defendant on all grounds except as already indicated, but I hold the patent to be void for want of originality, and therefore find for the defendant.