## SPECIALTY BRASS CO. v. SETTE et al.

Circuit Court of Appeals, Seventh Circuit.
November 29, 1927.

No. 3869.

**1. Patents ⬳328—Evidence held to support finding that plaintiff was inventor of valve covered by patent No. 1,551,853.**

Evidence, though unsatisfactory, *held* sufficient to support finding that plaintiff was inventor of valve covered by patent No. 1,551,853.

**2. Patents ⬳312(3)—Evidence held insufficient to show license agreement, whereby defendant was given exclusive right to manufacture and sell patented valves.**

In suit to enjoin infringement of patent No. 1,551,853, covering certain valve, and to recover damages for past infringement, evidence *held* insufficient to show any license agreement whereby defendant was authorized to manufacture and sell such valves exclusively, notwithstanding references to oral agreement between parties.

**3. Patents ⬳310(7)—Inconsistent pleas are available to defendant in patent infringement suit.**

In suit to enjoin infringement of patent and to recover damages for past infringement, inconsistent pleas are available to defendant.

**4. Patents ⬳311—Rejecting evidence showing state of prior art held proper, where pleading did not comply with statute relative to pleading invalidity (35 USCA § 69).**

In patent infringement suit, rejection of evidence showing state of prior art *held* proper, where defendant, if it intended to plead invalidity of patent, failed to comply with Comp. St. § 9466 (35 USCA § 69), in that it made no attempt to state names of patentees or dates of patents.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit by Frederick Sette and others against the Specialty Brass Company. Decree for complainants, and defendant appeals. Affirmed.

John H. Lee, of Chicago, Ill., for appellant.

S. L. Wheeler, of Milwaukee, Wis., for appellees.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This suit was brought by appellees to enjoin defendant, appellant herein, from infringing the Sette patent, No. 1,551,853, issued September 1, 1925, and also to recover damages for past infringements.

Appellant denied that Sette was the first and sole inventor or discoverer of any material or substantial part of the thing patented, and asserted that its officers and employees invented and devised the valve covered by the patent, and that Frederick Sette, the patentee, "surreptitiously and unjustly" obtained the allowance of his patent. Appellant further alleges that an officer and an employee of its company filed an application for a patent covering the same valve, which application is pending. As a further defense it says that, "if Sette be held to be the first inventor of the valve it has a license given by Sette to manufacture and sell said valves, and that its right so to do is an exclusive one."

[1] It will be unnecessary to discuss at length the testimony bearing on the first issue: Who was the inventor of the valve? The evidence thereon is far from satisfactory. The District Judge, who saw and heard the witnesses, found for appellees. He said:

"The plaintiff * * * got into the field of developing a gas or oil valve, and he disclosed to the defendant * * * what his ideas were, athough at this time * * * they were, as were the ideas of many inventors, crude * * * and unworkable, perhaps. * * * It appears perfectly clear to me, however crude the plaintiff's efforts may have been at first, that some time during the summer of 1922 he had by his own efforts, or in conjunction with the defendant's officers and employees, developed what are here in evidence as Exhibits 4 and 5, plaintiff's devices, which on inspection even by a layman appear to be quite well organized devices, * * * conceived to be sufficiently perfected to warrant making an effort looking towards their commercial exploitation. * * * At that time (October and November, 1922) plaintiff had developed, not merely his milk gate valve, but he proves rather clearly, unless he is to be treated as a perjurer, * * * that he had developed, not only the metal plug, but had himself done some work with respect to placing the spring inside the casing."

We have no hesitancy in approving the court's finding, so far as it covers the claims that are restricted to the bonded soft metal head idea. Some uncertainty arises over the claims which include a spring "acting directly upon the plug in a direction to maintain the plug upon the seat." While it is apparent that appellant's employees aided Sette in the production of a more practical and workable valve, we do not feel justified in saying that any one but Sette was the inventor. In other words, the finding of the District Court on the issue of priority is approved.

[2] As to the existence of a license—express or implied—the testimony is even more unsatisfactory. Much of this evidence consists of letters that passed between the parties. Appellees' letter of April 7th concludes: "We will proceed with such action as will protect our rights *as per our agreement with you.*" In another letter appellant says: "It is with a great deal of regret that we feel that we can no longer do business with you as we have in the past *on a verbal agreement.*"

Sette says in his letter of April 5th: "The following is my legal standing with you, namely, you will pay the royalty on every valve sold during the time patents are pending or granted. * * * I will go a long way to keep out of a lawsuit, but when I get into one there is no such thing as buying off. If you demand *a written agreement,* have it made, send it to me, and I will look it over." This letter was evidently written in response to one from appellant, wherein it said: "Of course you understand that when we were developing the gas valve for which we stood all expenses from beginning to end with no other thought in mind than that we would at least have the manufacturing rights without question."

Notwithstanding these references to an agreement, we are unable to spell out of the letters, or the oral testimony and the letters, any *license* agreement. Nor can we apply the rule announced in De Forest Radio T. & T. Co. v. U. S., 273 U. S. 236, 47 S. Ct. 366, 71 L. Ed. 625, to the facts in the case and say the actions of the parties created a license. Appellant's letter of April 2d and the testimony of Mr. Anderson, appellant's secretary and treasurer, explaining it, justify the conclusion which the District Judge reached.

In this letter appellant said: "We are inclosing herewith letters from the Standard Oil Company as per your request of the 28th ult. We are taking inventory of all our parts for the valve and will send you bill for these, *together with bill for patterns, tools, experimental work, etc.* We trust you will make prompt settlement, as we want to settle this proposition as quickly as possible."

Confronted by this letter when on the witness stand, Mr. Anderson testified:

"We thought later, after the letter was written, the compensation would not be great enough, and we never even submitted our prices to Sette. We thought the valve was too big to pass up just for the patterns and tools and the work we had done. We figured we should have the manufacturing rights after that, and backed down on the letter and reconsidered it. * * * I wrote the letter of April 2, 1924, on my own responsibility, and then we talked it over later and I did not send the bill. I went over the items myself, and found that the bill would have been for about two thousand dollars."

"Court: Then tell us what happened. You and your associates talked it over and concluded that was not enough? A. We thought it possibly was not enough for the efforts and thoughts and worry we put into the thing; that we would be willing to let that go by if we could have the manufacturing rights.

"Court: Why didn't you raise your bill? It was a question of valuing those things, wasn't it? A. Sometimes those things run into more money.

"Court: Or is it a fact you did not follow this up merely because you thought you would be in a better position to claim you were the inventor, or, if Sette was the inventor, you could hold him to manufacturing or shop rights? A. Nothing would have been done—

"Court: Is that the idea? You wanted to leave it in that shape, so that, if Sette tried to do anything, you could take one or the other of those positions? A. Yes, sir."

In the light of this evidence appellant is in no position to insist that it has a license, much less to assert the existence of an agreement for an exclusive license to manufacture the patented article during the life of the patent. Sette ordered appellant, the manufacturer, to make certain valves. The latter did so. Modifications were made and more valves were turned out. Estimates were requested and given covering costs on the basis of large orders. The relation of debtor and creditor was created, but we cannot say a license was granted to the manufacturer.

[3, 4] As a final defense, appellant asserts that error was committed in the rejection of certain evidence showing the state of the prior art. This evidence bore solely upon the validity of the patent, which issue the

District Court held was not presented by the answer.

Appellant insists that it can plead as many defenses, consistent or inconsistent, as it has, and that, in addition to asserting that it, rather than the appellee, was the first and original inventor of the novel device, it could and did deny the validity of the patented article. Inconsistent pleas are available to the defendant, and for the purpose of this argument we may assume that all of the defenses sought to be raised in this court were available to appellant.

Even with such concession, appellant is met by the objection that it did not plead invalidity sufficiently to permit of the reception of this evidence. If it was the pleader's intention to rely upon the prior art to defeat the validity of the Sette patent, there was a total failure to comply with section 9466, United States Compiled Statutes (35 USCA § 69), in that there was no attempt made to state the names of the patentees or the dates of their patents as required by this statute. But we think we are safe in saying that there was no attempt made in the answer to attack the validity of the patent.

Construing the answer most liberally, we conclude that the only defenses presented were inconsistent with and repugnant to the defense which assailed the validity of the patent. While appellant denied that "Sette was the original, sole, and first inventor of said subject matter or any part thereof" its other allegations justified its adversaries and the court in concluding that it was not the validity of the patent that was disputed, but rather Sette's claim to being the first inventor. We base this conclusion upon the following quotation from the answer:

"Defendant further says * * * that Frederick Sette surreptitiously and unjustly obtained the patent for that which was in fact * * * invented and devised in all of its essential parts by officers and employees of defendant company, namely, Charles M. Anderson and Martin Pedersen; that said valve was so devised and invented by said Anderson and Pedersen * * * prior to the time that the same was known to said Frederick Sette; * * * that application for letters patent on said improved valve was filed in the United States Patent Office by Charles M. Anderson and Martin Pedersen; * * * that under the practice in the United States Patent Office the pending application of Charles M. Anderson and Martin Pedersen will be placed in interference with said Sette patent for the purpose of determining the question of inventorship and priority of invention," etc.

We conclude, therefore, that no error was committed in excluding the proffered evidence of the prior art.

The decree is affirmed.