## HOOKLESS FASTENER CO. v. H. L. ROGERS CO., Inc.

District Court, S. D. New York.    May 14, 1928.

**1. Patents ⊙⇒311—Testimony of prior use held inadmissible without pleading such use as defense.**

Where defense of prior use was not pleaded in patent infringement suit, testimony relative thereto was inadmissible.

**2. Patents ⊙⇒16—"Invention" means new idea, thought, or concept, and must include means by which given result may be obtained.**

"Invention" sufficient to sustain a patent means a new idea, thought, or concept, whether the same be simple or complex, and it must be more than suggestion or possibility of arriving at a given result, and must include the means by which a given result may be obtained.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

**3. Patents ⊙⇒112(3)—Grant of patent raises presumption of validity.**

The grant of a patent raises the presumption of its validity.

**4. Patents ⊙⇒328—1,322,650, claims 4, 5, 13, and 20, for type of fastener, held valid and infringed.**

Sundback patent, No. 1,322,650, claims 4, 5, 13, and 20, for a certain type of fastener, *held* valid and infringed.

In Equity. Patent infringement suit by the Hookless Fastener Company against the H. L. Rogers Company, Inc. Decree for plaintiff.

Cleon J. Sawyer and Julian S. Wooster, both of New York City, for plaintiff.

Robert Cushman, of Boston, Mass., and Drury W. Cooper, of New York City, for defendant.

WINSLOW, District Judge. This action is brought against the defendant for the alleged infringement of Sundback patent, No. 1,322,650, issued November 25, 1919, to plaintiff.

Attention is particularly directed to a tobacco pouch manufactured by the plaintiff under the patent known on the market as "Locktite." A tobacco pouch manufactured and sold by the defendant is alleged to infringe plaintiff's device.

The claims relied on by the plaintiff are numbered, respectively, 4, 5, 13, and 20. The defense is that plaintiff's patent is invalid by reason of anticipation and lack of invention, and also that the defendant has not infringed.

[1] The defendant relies upon three United States patents and one British patent as anticipatory. It is further contended by the defendant that the element of double patenting is present as to claim 13. Some uncorroborated oral testimony was offered by defendant at the trial as to the alleged prior use and manufacture of plaintiff's device in hand bags, to which objection was duly made by plaintiff. This defense had not been pleaded, and I think objection to the introduction of this testimony was well founded. In any event, the testimony was not at all persuasive or convincing.

I am impressed that the defendant's device is not mechanically different from plaintiff's. Attention is therefore directed to what advance, if any, in the art was accomplished by Sundback, as claimed by the patent in suit. Is invention present? The specific claims relied upon relate only to the fastener combination for slit closures. There are two features comprehended by the patent—(1) a bias stringer; and (2) the slit closure combination.

The patent in suit acknowledges Sundback patent, No. 1,243,458, as a prior art, and goes on to say that—

"A further feature of the invention resides in the application of the type of fastener disclosed in the aforesaid patent to interior straight or curved slit closures in a fabric body. * * * Heretofore fasteners of this type have only been employed in closures wherein the ends are freely separable, and where this separability of the ends has been employed for opening the fastener, as in a shoe or placket. * * * In slit closures, according to this invention, the opening movement is required to be positive as well as the closing movement, both because an interior slit opening does not permit pulling apart of the stringer ends to open the fastener, and also because it is desirable to provide a fastener which is not accidentally self-opening. To accomplish this result, the angle between the channels of the slider is made small and the channels straight sides, so that the slider does not slide even if the stringers are pulled apart, and the fastener is only opened when the slider is positively actuated in the proper direction, the fastener when closed being held against accidental opening under transverse strain by the slider friction."

In other words, what Sundback did in the patent in suit was to provide a slider in the combination, the so-called interior slit being the opening permanently closed at both ends, the function of which ends is to stop the slider, to stop it and lock it closed and prevent accidental opening. The distinguishing fea-

ture of his invention is that the opening or closing is *initiated* and *effected* by moving the slider on the stationary stringers, and not by stringers movable apart under tension to cam the slider along.

Claim 4 of the patent is as follows:

"In a fastener, a body having an interior slit, connecting members on the edges of said slit, and means movable on said edges between the ends of said slit and controlling said members to open and close said slit."

In Sundback patent, No. 1,243,458, the stringers were torn apart or pulled apart to open. The patent in suit does the reverse. Or, to put it in another way, Sundback conceived the idea of combining with an interior slit, i. e., a slit permanently closed at both ends, connecting or interlocking members on the slit edges and an edge slider, in such a way that the slider would coact with the closure at the end of the slit to fully close that end of the slit and lock the slit against opening. With this combination, the slit could not be opened by pull on the edges of the body, but only by moving the slider along the edges from the closed end of the slit.

Claim 5 is as follows:

"5. In a fastener, a body having an interior slit, interlocking members on the edges of said slit, and means movable on said edges between the ends of said slit to lock said members and close the slit when moved in one direction and unlocking said members to open the slit when moved in the other direction."

This claim differs slightly from claim 4, in that it is more specific as to members which interlock and also to the "means movable" which both locks the members and closes the slit when moved in one direction, and unlocks the members to open when moved in the other direction. Both claims 4 and 5 cover the function of opening and closing by the initial actuation of the "means movable."

Claim 13 is as follows:

"13. In a fastener, a body having an interior slit, interlocking members on the edges of said slit, and a slider positively movable in each direction for locking and unlocking said members, said slider having its divergent cam channels at such a low angle to each other as to frictionally hold the slit locked until positively moved to unlock."

This claim is limited to "interlocking members," and the slider "having its divergent cam channels at such low angle to each other as to frictionally hold the slit locked until positively moved to unlock," and is "positively movable in each direction for locking and unlocking said members."

26 F.(2d)—17½

Claim 20 is as follows:

"20. A curtain, glove, receptacle, money belt or the like comprising a fabric body having an interior slit, stringers permanently secured lengthwise and adjacent each end to said body, one being on each side of the slit, connecting members carried by said stringers, and a sliding device mounted on said stringers and capable of being positively pulled in either direction to actuate said connecting members to open and close said slit substantially as herein described and illustrated."

This claim involves a limitation not specifically stated in the other claims, that the stringers are "permanently secured lengthwise and adjacent each end to said body." It suggests claim 4, referring, however, to "connecting members," rather than "interlocking members," as specified in claims 5 and 13. The specific reference is to the sliding device mounted on the stringers, "capable of being positively pulled in either direction" to open and close the slit.

Defendant's tobacco pouch has a slit closed at each end, and the slider stops in such position that it connects with the closed end to lock the slit. It will not open unless the slider is pulled to open. While defendant's slider is somewhat different in design from plaintiff's, I deem it to be an equivalent so far as the claims in suit are concerned.

The claim of anticipation merits serious study. The patent which, at first blush, might seem to anticipate this patent is Judson No. 504,038, August 29, 1893. This patent prompted the court to hesitate before coming to the conclusion hereinafter expressed. Judson's invention was especially designed for use as a shoe fastener. It disclosed a hand device or detachable guide to engage the clasps when moved in one direction, and to open them when reversed in direction, and moved in the same direction as in opening. In other words, the guide was not unlike a key. Judson's description leads us to the conclusion, however, that the lower end of the shoe, which was closed by the device, was not permanently closed; an opening being left for the insertion of the guide. The guide is not stopped at either end, but is intended to be detached. It is true that Judson said that his device might be applied "to mail bags, belts, and the closing of seams uniting flexible bodies," but he did not say how to do it, nor is there any disclosure of such other structure that he had in mind.

Calhoun, No. 887,586, May 12, 1908, shows a garment closing device embodying hook and eye members. But the slider is

separable by sliding apart and is disconnected in order to enable the stringers to be torn apart. There is no slit permanently closed at each end as in the patent in suit.

Bowen, No. 896,685, August 18, 1908, is for placket and other similar openings. This patent does not disclose any interior slit or permanent connection at the closed end.

The Underwood patent, No. 1,190,344, July 11, 1916, is not only unlike the patent in suit in function, but differs in operation, and the advantages of the patent in suit are absent.

I do not think the British patent No. 14,-358 (1912) anticipates plaintiff. It discloses an interlocking type of fastener, opened by pulling apart the two ends.

Sundback, No. 1,219,881, March 19, 1907, and Sundback, No. 1,243,458, October 16, 1907, do not disclose the invention which is the subject of this suit. The latter patent (No. 1,243,458) is mentioned and disclaimed in the patent in suit.

Sundback, No. 1,302,606, May 6, 1919 (claim 14), is contended by the defendant to be a case of double patenting of claim 13 of the patent in suit. It discloses (No. 1,302,-606) a slider suitable for the combination in suit, but it does not disclose the locking of the slider by the end closure of the slit. This locking of plaintiff's device is independent of the slider angle, and is by co-operation of the slider with the permanently closed end of the slit. I think there is a valid combination in claim 13 of the patent in suit between the locking caused by abutting the slider positively movable in either direction against the permanently closed end of the slit, and, the additional frictional locking of the low angle slider on the interlocking members. The test of identity, where double patenting is claimed, is whether both, when properly construed in the light of the description, define essentially the same thing. In the instant case, Sundback invented and patented a low angle slider, but he also invented the broad combination in the art of controlling slits permanently closed at each end, in which his particular slider might or might not be used. In claims 4, 5, and 20 in suit, he did not limit himself to this particular slider, whereas in claim 13 he did, but I do not believe that patent No. 1,302,606 forecast the combination of the patent in suit. If then the patents are not identical, and the Sundback No. 1,302,606 was co-pending with the patent in suit, it is not prior art.

[2] The real inquiry in the instant case is whether or not invention is present, and invention means a new idea, thought, or concept, whether the same be simple or complex. It must be more than suggestion or possibility of arriving at a given result, and must include the means by which a given result may be attained, but preceding the accomplishment is the new idea.

Turning back to the Judson patent, which, as indicated, caused the court to hesitate, it is true that any one after Judson might have produced the combination of the patent in suit, but it remained for Sundback, by his adaption of known things, to produce a new and unexpected result, thus creating something. The simplicity of the Sundback invention is apparent, but the utility of his particular combination was not conceived by any of his predecessors. The plaintiff's device has attained great commercial success, and, after these years of assured success and widespread popular demand, defendant's "E-Z-Lok" pouch appeared in 1925. It is a tribute to the inventive genius of Sundback.

[3] The grant of the patent raises the presumption of validity, and this presumption of validity has not been overcome by the defendant. Plaintiff's device is an advance in the art, and its success is admitted.

[4] The judgment of the court is that claims 4, 5, 13, and 20 are valid and infringed.

Decree for plaintiff.