## ELECTRIC STORAGE BATTERY CO. *v.* SHIMADZU ET AL.

No. 441. Argued February 28, 1939.—Decided April 17, 1939.

6

*Mr. Hugh M. Morris,* with whom *Messrs. Augustus B. Stoughton* and *Alexander L. Nichols* were on the brief, for petitioner.

*Messrs. Edmund B. Whitcomb* and *George Whitefield Betts, Jr.,* with whom *Messrs. Joseph W. Henderson* and *George Yamaoka* were on the brief, for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The courts below have held valid and infringed certain claims of three patents[1] granted to Genzo Shimadzu, a citizen and resident of Japan. The earliest is for a method of forming a finely divided and, consequently, more chemically reactive, lead powder. The second is for a method or process of manufacturing a fine powder composed of lead suboxide and metallic lead and for the product of

[1]

| Patents. | Date granted | Claims |
|---|---|---|
| 1,584,149 | 5/11/1926 | 1 and 2 |
| 1,584,150 | 5/11/1926 | 1–4, 6, 8–13 |
| 1,896,020 | 1/31/1933 | 10 and 11 |

the process. The third is for an apparatus for the continuous production of lead oxides in the form of a dry fine powder. Such powder is useful in the manufacture of plates for storage batteries.

The bill was filed by the respondents as patentee and exclusive licensee. The answer denied that Shimadzu was the first inventor; asserted knowledge and use of the invention by the petitioner in the United States more than two years prior to the dates of the applications; and pleaded that earlier patents procured by Shimadzu in Japan avoided the United States patents as the former were for the same inventions and each was granted more than a year prior to the filing of the corresponding application in this country. The case was tried, the District Court found the facts, stated its conclusions, and entered a decree for the respondents,[2] which the Circuit Court of Appeals affirmed.[3] The petitioner sought certiorari alleging that the case presents three questions, one which should be settled by this court and two which were decided below contrary to our adjudications.

The questions are: In an infringement suit by the owner of a patent for an invention, made but not patented or published abroad, to restrain an innocent use, the inception of which antedates the application for patent, may the plaintiff prove that his actual date of invention was earlier than the commencement of the asserted infringing use? Is the delay of the patentee in this case in applying for patent a bar to relief for alleged infringement? Does commercial use of the patented process and apparatus in the alleged infringer's plant for more than two years prior to the application for patent preclude redress?

[2] 17 F. Supp. 42.
[3] 98 F. 2d 831.

No controversy of fact is involved as the petitioner concedes it must accept the concurrent findings of the courts below.[4] The relevant facts lie within a narrow compass.

The inventions which are the basis of the patents were conceived by Shimadzu and reduced to practise in Japan not later than August 1919. He did not disclose the inventions to anyone in the United States before he applied for United States patents. Application was presented for No. 1,584,149 on January 30, 1922; for No. 1,584,150 on July 14, 1923; and for No. 1,896,020 on April 27, 1926. The inventions were not patented or described in a printed publication in this or any foreign country prior to the filing of the applications. The petitioner, without knowledge of Shimadzu's inventions, began the use of a machine, which involved both the method and the apparatus of the patents, at Philadelphia, Pennsylvania, early in 1921 and attained commercial production in June 1921. Over the objection of the petitioner the respondents were permitted by testimony, and by the introduction of contemporaneous drawings and note books, to carry the date of invention back to August 1919, and the courts below fixed that as the date of invention and reduction to practise in Japan.

*First.* The petitioner asserts that R. S. 4886, 4887, and 4923,[5] considered together, require one who has made

---

[4] At the trial the respondents relied, to some extent, upon an adjudication in an interference proceeding between Shimadzu and Hall, an employe of the petitioner who in 1924 applied for a patent for a process of producing finely powdered mixed lead and lead oxide. See *Hall* v. *Shimadzu,* 59 F. 2d 225. The courts below have held that this interference has no bearing upon the present controversy and their holding in this respect involves questions of fact. As the respondents did not cross-petition they may not, in this court, attack the findings in question.

[5] U. S. C. Tit. 35, §§ 31, 32, 72.

an invention abroad to take as his date of invention the date of his application in the United States unless, prior thereto, the invention has been communicated and described to someone in this country, or has been patented abroad. The respondents insist that the sections have no such force. They say that where the alleged infringer is not acting under the supposed protection of a prior patent, but is using an unpatented process or device, the holder of a patent for a foreign invention, like the holder of one for an invention made here, may show novelty by proving that his invention antedated his application and the infringing use.

The solution of the issue requires examination of two of the sections in the light of their development from earlier patent statutes.

R. S. 4886, as it stood when the patents were granted,[6] was:

"Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, not known or used by others [in this country], [before his invention or discovery thereof], and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, [or more than two years prior to his application], and not in public use or on sale [in this country] for more than two years prior to his application, unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceeding had, obtain a patent therefor."

The legislative history of the section may be briefly outlined. The Patent Act of 1790 [7] authorized the grant

---

[6] The section was amended by the Act of May 23, 1930, c. 312, § 1, 46 Stat. 376, to authorize the patenting of inventions of certain plants.

[7] Act of April 10, 1790, § 1, 1 Stat. 109.

of a patent to "any person or persons" who made an invention "not before known or used." The succeeding Act of 1793 [8] confined the privilege to "a citizen or citizens of the United States," but the Act of 1800 [9] conferred it on any alien who, at the time of his application, had resided for two years within the United States. By the Act of 1836 [10] it was provided that a patent might be obtained by "any person or persons." The Act of 1870,[11] which was carried into the Revised Statutes, added the words "in this country" as they appear in the first bracket in the foregoing quotation. The Act of 1897 [12] added the three other bracketed clauses.

The requirement of the Act of 1790 was that the discovery be "not before known or used." The Act of 1793 amended this to read "not known or used before the application." The Act of 1800 altered the provision so that the petitioner had to swear that his invention had not "been known or used either in this or any foreign country." The Act of 1836 changed the knowledge and use clause to read "not known or used by others before his or their discovery or invention thereof."

These successive alterations throw into relief the fact that the section makes the criterion of novelty the same whether the invention was conceived abroad or in this country. The test is whether the invention was "known or used by others in this country, before his invention or discovery thereof . . ." The elements which preclude patentability are a patent, or a description in a printed publication in this or any foreign country, which antedates the invention or discovery of the applicant.

[8] Act of Feb. 21, 1793, § 1, 1 Stat. 318.

[9] Act of April 17, 1800, § 1, 2 Stat. 37.

[10] Act of July 4, 1836, § 6, 5 Stat. 117, 119.

[11] Act of July 8, 1870, c. 230, § 24, 16 Stat. 198, 201.

[12] Act of March 3, 1897, c. 391, § 1, 29 Stat. 692.

None of the statutes has ever embodied as an element the place of invention or discovery, but the change effected by the Act of 1836, and carried forward in all succeeding statutes, is the fixation of the actual date of the inventive act as the date prior to which the invention must have been known or used to justify denial of a patent for want of novelty. The omission of any limitation as to the place of invention or discovery precludes a ruling imposing such a limitation, especially so since the Act of 1870 expressly limited the area of prior knowledge or use to this country.

The provisions of R. S. 4886 which affect the question are not modified by R. S. 4887, the purpose of which is to permit the filing of applications for the same invention in foreign countries and in the United States. It derives from § 25 of the Act of 1870.[13]

The second paragraph of the section, which was added by the Act of 1903 [14] to comply with reciprocal agreements with foreign countries, gives the same force and effect to the filing of an application in a foreign country as it would have if filed here on the date on which the application for patent was first filed in the foreign country, provided that the domestic application is filed within twelve months of the foreign filing date. The last sentence of the paragraph expressly preserves the bars of more than two years' prior patenting, description in a printed publication before the filing of application in this country, and public use, more than two years before such filing. But the section does not contain any provision which precludes proof of facts respecting the actual date of invention in a foreign country to overcome the prior knowledge or use bar of § 4886.

The petitioner also relies upon R. S. 4923, which provides that if the patentee, at the time of his application,

---

[13] § 25, 16 Stat. 201.
[14] Act of March 3, 1903, § 1, c. 1019, 32 Stat. 1226.

believed himself the original or first inventor, his patent shall not be refused or held void by reason of the invention having been known or used in a foreign country, before his invention or discovery, if it had not been patented or described in a printed publication. The effect of this section is that in an interference between two applicants for United States patent, or in an infringement suit where the alleged infringer relies upon a United States patent, the application and patent for the domestic invention shall have priority despite earlier foreign knowledge and use not evidenced by a prior patent or a description in a printed publication.

The section, on its face, is without application where the litigation is between the patentee of a foreign invention, or his assignee, and an alleged infringer who defends only in virtue of prior knowledge or use not covered by a patent.

While this court has never been called upon to decide the precise question presented, the lower federal courts have refused to extend § 4923 to such a case. They have held that § 4886 does not limit the plaintiff to the date of application in this country but that he may prove the invention was in fact made at an earlier date, as could the owner of an invention made in the United States.[15]

There is force in the petitioner's argument that the distinction seems illogical. Thus, if a diligent domestic inventor applies, in good faith believing himself to be the first inventor, § 4923 assures him a patent and gives it priority, despite prior foreign use, even though that use is evidenced by a patent applied for after the invention made in this country. The foreign applicant or patentee

---

[15] *Hanifen* v. *E. H. Godshalk Co.*, 78 F. 811; *Welsbach Light Co.* v. *American Incandescent Lamp Co.*, 98 F. 613; *Badische Anilin & Soda Fabrik* v. *Klipstein & Co.*, 125 F. 543; *Claude Neon Lights, Inc.* v. *Rainbow Light, Inc.*, 47 F. 2d 345.

14

cannot carry the date of his invention back of the date of application in this country, as the holder of a later patent for an invention made here would be permitted to do in order to establish priority. On the other hand, a domestic inventor who is willing to dedicate his invention to the public may be held as an infringer by reason of the later patenting of an invention abroad which antedates the invention and use in this country; and so is put in a worse position *vis à vis* a foreign inventor who subsequently secures a patent, and succeeds in establishing an earlier date of invention, than he would occupy if he had promoted his own interest by procuring a patent.

We have no way of knowing whether the discrimination results from inadvertence or from some undisclosed legislative policy, but, in order to redress the disadvantage under which one in the petitioner's situation suffers, we should have to read into the law words which plainly are missing.[16] We cannot thus rewrite the statute.[17] Moreover §§ 4886 and 4887 have repeatedly been amended and other portions of the patent act have been revised and amended from time to time since the decisions pointing out that § 4886 did not prevent the foreign inventor from carrying back his date of invention beyond the date of his application. Congress has not seen fit to amend the statute in this respect and we must assume that it has been satisfied with, and adopted, the construction given to its enactment by the courts.[18]

---

[16] The petitioner would have us insert in § 4886, for the third time, the words "in this country" which Congress has twice inserted in the section by amendment. The petitioner's argument requires us to read the section as if the phrase "in this country" appeared between the words "discovery thereof" and the words "and not patented."

[17] *Dewey* v. *United States*, 178 U. S. 510.

[18] *Sessions* v. *Romadka*, 145 U. S. 29, 41–42; *Manhattan Properties, Inc.* v. *Irving Trust Co.*, 291 U. S. 320, 336; *United States* v. *Elgin, J. & E. Ry. Co.*, 298 U. S. 492, 500; *Missouri* v. *Ross*, 299 U. S. 72, 75.

We are of opinion that the courts below were right in not limiting Shimadzu's date of invention to the date of his application but allowing him to show an earlier actual date.

*Second.* A patent is not validly issued if the invention "is proved to have been abandoned." [19] Abandonment may be evidenced by the express and voluntary declaration of the inventor; [20] it may be inferred from negligence or unexplained delay in making application for patent; [21] it may be declared as a consequence of the inventor's concealing his invention and delaying application for patent in an endeavor to extend the term of the patent protection beyond the period fixed by the statute.[22] In any case, the question whether the invention has been abandoned is one of fact.[23]

Referring to a Japanese patent applied for November 27, 1920, and issued May 10, 1922, the District Court found: "We are not concerned with the motives which prompted him .... to confine it [the Japanese patent] to the single step of mechanical removal of the dust from the drum, and to withhold the really essential steps of the invention for later patenting. It is sufficient to say that he had the right to do this if he chose." Taken in connection with the court's finding that Shimadzu's inventions were conceived and reduced to practise in August 1919 this finding is said to convict him of intentional and inexcusable concealment. In the light of the record we are unable so to hold.

[19] R. S. 4886, *supra.*

[20] *Kendall* v. *Winsor*, 21 How. 322, 329; *U. S. Rifle & Cartridge Co.* v. *Whitney Arms Co.*, 118 U. S. 22, 25.

[21] *Consolidated Fruit-Jar Co.* v. *Wright*, 94 U. S. 92, 96; *U. S. Rifle & Cartridge Co.* v. *Whitney Arms Co.*, *supra*, p. 25.

[22] *Kendall* v. *Winsor*, *supra*, p. 328; *Macbeth-Evans Glass Co.* v. *General Electric Co.*, 246 F. 695; *Bliss Co.* v. *Southern Can Co.*, 251 F. 903; *Victor Talking Machine Co.* v. *Starr Piano Co.*, 281 F. 60.

[23] *Pennock* v. *Dialogue*, 2 Pet. 1, 16.

R. S. 4920 [24] makes abandonment an affirmative defense which must be pleaded and proved.[25] Admittedly the defense was not pleaded and the respondents assert, without contradiction, that it was not relied upon in brief or argument in the courts below. The petitioner explains its failure so to plead by saying that, when it filed its answer, it believed that certain of the Japanese patents issued to Shimadzu covered the identical inventions described in the patents in suit and invalidated the latter because application was not made in this country within one year of the grant of the foreign patents as required by R. S. 4887. The claim is that the refusal to sustain this defense and the assignment of August 1919 as the date of invention, took petitioner by surprise; and that the question of Shimadzu's concealment of his invention from 1919 until he made his applications in the United States did not emerge until the District Court's decision was rendered.

We think this is not a sufficient excuse for not pleading the defense. Alternative and inconsistent defenses may be pleaded.[26] Certainly if the petitioner was surprised it could at least have requested an opportunity to amend its answer. If the defense had been pleaded originally or by amendment the respondents would have had an opportunity to meet it by proof and this they appear not to have been afforded. We have a finding which seems not to have been addressed to this issue; and no findings as to the circumstances which led to the delay in filing applications. In the circumstances we think we are not justified in assigning to the findings below the force of a finding that Shimadzu, with intent, concealed

[24] U. S. C. Tit. 35, § 69.

[25] *Crown Cork Co.* v. *Gutmann Co.*, 304 U. S. 159, 165. Compare *Mumm* v. *Decker & Sons*, 301 U. S. 168, 171.

[26] *Jones* v. *Sewall*, 13 Fed. Cas. 1017, 1028; *Specialty Brass Co.* v. *Setté*, 22 F. 2d 964, 966; *Walsh* v. *Wahle Co.*, 25 F. 2d 350, 351.

his invention and delayed making applications for the purpose of unduly extending the life of his patents,—a defense not pleaded.

*Third.* If a valid patent is to issue, the invention must not have been in public use in this country for more than two years prior to the filing of the application.[27] Such public use is an affirmative defense to be pleaded and proved.[28] The respondents insist that it was not pleaded in this case and that the findings respecting the defense, on which the petitioner relies, are unsupported by the evidence. We cannot agree with either position.

Although not required so to do, the respondents in their bill pleaded with respect to each of the patents that the invention had not been in public use for more than two years before application filed. The petitioner denied the allegation as to each patent and, in addition, alleged that it was successfully making and selling the product of the invention in its plant long before it ever learned of Shimadzu's existence or his inventions, and further asserted that "the claims of said letters patent are invalid and void because the subject matter thereof was, prior to the alleged invention thereof by Shimadzu, and for more than two years prior to his application dates, known to and used by the defendant at Philadelphia, Pennsylvania, . . ." Upon the trial, employes of the petitioner described an early apparatus and process used in 1918 and 1919 and abandoned in the latter year when experiments began towards employment of the apparatus and process the petitioner now uses. They testified to the increasing perfection of the apparatus and process during the early months of 1921, and that commercial production was accomplished sometime between

[27] R. S. 4886, *supra.*

[28] R. S. 4920, *supra; Klein* v. *Seattle,* 63 F. 702; *Hookless Fastener Co.* v. *Rogers Co.,* 26 F. 2d 264.

April and June of that year. Former employes of the petitioner were called by the respondents and described this apparatus and process as used and practised in the petitioner's plant in Philadelphia subsequent to the date of Shimadzu's applications, but the evidence indicates that, after its perfection in 1921, the same apparatus has been used, and the same process practised, from that date to the present. This is the apparatus and process which the courts below have held to infringe. The District Court found "commercial production by the Hardinge mill with its forced air draft undoubtedly involved the use of the plaintiff's patent, and June, 1921, may be fixed as the date when that began." The respondents insist that this does not amount to a finding of prior public use, distinguishing between the court's phrase "commercial production" and the designation "public use" found in the statute. We think the position is untenable.

The finding of the District Court appears under a heading in its opinion entitled "Alleged Prior Public Use." As originally promulgated the finding fixed January 1921 as the date of commercial production. The respondents sought a rehearing and asked that the finding as to commercial production in January 1921 be revised. A rehearing was granted and the District Judge filed a memorandum amending his opinion. In this he said: "As to the second statement of fact, it may be said at once that it was never intended by the Court to make a finding of a prior public use (in the statutory sense of that term) by the defendant in January 1921." After discussing the use of the apparatus in the early months of 1921, the court said: "It is therefore plain that there is no evidence of anything beyond an experimental use by the defendant earlier than about the middle of the year 1921. It is entirely possible that the word 'January' in

the second statement of fact referred to above is a mere typographical error and that what the Court had in mind was, 'June.' However that may be and in order to avoid any possible misunderstanding as to the scope of the finding, I will amend it to read 'Commercial production by the Hardinge mill with its forced air draft undoubtedly involved the use of the plaintiff's patent, and June, 1921, may be fixed as the date when that began.' "

Both parties appealed to the Circuit Court of Appeals. That the respondents understood the force and effect of the finding as to prior use is evident from their assignments, one of which is that the District Court erred "in finding and adjudging that commercial production by the Hardinge mill with its forced draft involving the use of plaintiff's patent began in June 1921."

It remains to determine whether the commercial use found is, in contemplation of law, a public use within the meaning of R. S. 4886. We hold that it is.

The earlier Acts provided that the bar should consist in public use or sale "with the applicant's consent or allowance prior to the application." [29] The Act of 1839 [30] altered the clause to read "no patent shall be held to be invalid" except upon proof that "such . . . prior use has been for more than two years prior to such application for a patent." This court construed the later Act, which has been carried forward into the revised statutes, as rendering prior public use a bar whether the use was with or without the consent of the patentee. [31]

Decisions turning on prior public use have been numerous both in this court and in other federal courts; and the definition of such use, formulated when the statute made only use by consent a bar, has been adopted in

[29] Act of July 4, 1836, § 7, 5 Stat. 117, 119.
[30] Act of March 3, 1839, § 7, 5 Stat. 353, 354.
[31] *Andrews* v. *Hovey*, 123 U. S. 267; on rehearing, 124 U. S. 694.

instances where the use was without consent or knowl-edge of the applicant for patent.[32]

A mere experimental use is not the public use defined by the Act,[33] but a single use for profit, not purposely hidden, is such.[34] The ordinary use of a machine or the practise of a process in a factory in the usual course of producing articles for commercial purposes is a public use.[35]

In the present case the evidence is that the petitioner, since June 1921, has continuously employed the alleged infringing machine and process for the production of lead oxide powder used in the manufacture of plates for stor-age batteries which have been sold in quantity. There is no finding, and we think none would have been justi-fied, to the effect that the machine, process, and product were not well known to the employes in the plant, or that efforts were made to conceal them from anyone who had a legitimate interest in understanding them.[36] This use, begun more than two years before Shimadzu applied for patents 1,584,150 and 1,896,020, invalidated the claims in suit.

*Fourth.* The defense of prior public use is not made out against patent 1,584,149, for which application was

---

[32] *Detroit Lubricator Co.* v. *Lunkenheimer,* 30 F. 190; *United States Electric Lighting Co.* v. *Edison Lamp Co.,* 51 F. 24, 28; *Front Rank Steel Furnace Co.* v. *Wrought Iron Range Co.,* 63 F. 995, 998; *A. Schrader's Sons, Inc.* v. *Wein Sales Corp.,* 9 F. 2d 306, 308; *Twyman* v. *Radiant Glass Co.,* 56 F. 2d 119; *In re Martin,* 74 F. 2d 951; *Paraffine Co.* v. *Everlast, Inc.,* 84 F. 2d 335; *Becker* v. *Electric Service Supplies Co.,* 98 F. 2d 366.

[33] *Elizabeth* v. *Pavement Co.,* 97 U. S. 120, 134.

[34] *Consolidated Fruit-Jar Co.* v. *Wright, supra,* 94; *Egbert* v. *Lipp-mann,* 104 U. S. 333, 336.

[35] *Manning* v. *Cape Ann Isinglass Co.,* 108 U. S. 462, 465; *Twy-man* v. *Radiant Glass Co., supra; Paraffine Co.* v. *Everlast, supra,* pp. 338, 339.

[36] Compare *Hall* v. *Macneale,* 107 U. S. 90, 96–97.

filed January 30, 1922. The defendant's commercial production commenced about six months earlier. The District Court held the patent valid and infringed. Its claims cover merely a process for the production of a finely divided chemically reactive lead powder by introducing relatively large masses of lead into a rotatable vessel, rotating the vessel at a relatively low speed, forming the powder by attrition resulting from the rubbing of the masses against each other, and blowing the powder from the vessel by a current of air. The process and apparatus covered by the other two patents in issue involve use and control of an air current and use and control of temperature within the receptacle for the oxidation of the lead. With respect to 1,584,149 the trial court said:

"Whether or not '149 is for the same process as U. S. patent '150 is immaterial, so far as the question of validity of either is concerned. There is no double patenting involved. The two patents issued on the same day. They both expired on the same day. There can be no extension of the monopoly and one is not prior art against the other.

"The fact that '149 does not disclose the oxidizing function of the air or refer to the highly important element of the process having to do with the temperature control necessary to its successful operation might throw doubt upon its validity in view of the prior art. This is, of course, upon the assumption that it is not for the same invention as '150. The whole matter however is rather academic since '149 is coincident in duration with '150, and the defendant's process infringes the somewhat more precise, if not narrower, claims of '150.

"This patent is therefore held valid and infringed."

The holding was assigned as error in the Circuit Court of Appeals and is specified as error in the petition for certiorari.

In view of our decision as to 1,584,150 and of the basis of the decision below respecting 1,584,149, we think the petitioner is entitled to a reëxamination of the questions of the validity and infringement of the latter.

The decree of the Circuit Court of Appeals must be reversed and the cause remanded to the District Court with directions to dismiss the bill as to Nos. 1,584,150 and 1,896,020, and to proceed, in the light of the dismissal as to those patents, to determine whether 1,584,149 is valid and infringed.

*Reversed.*