**Llewellyn A. HAUTAU**
**and**
**Charles F. Hautau, Plaintiffs,**

**v.**

**KEARNEY & TRECKER CORPORA-TION, a Wisconsin corporation, Defendant.**

**Civ. No. 19873.**

United States District Court
E. D. Michigan, S. D.

Feb. 10, 1961.

Colman, Nord & Krass, Southfield, Mich., for plaintiffs.

Dickinson, Wright, McKean & Cudlip, Detroit, Mich., Quarles, Herriott & Clemons, Milwaukee, Wis., of counsel, for defendant.

KAESS, District Judge.

On June 2, 1954 the plaintiffs jointly made application to the United States Patent Office for a letter patent on a "Mechanical Loader and Unloader for Production Machines", which was grant-

ed a year later (on June 28, 1955) as patent No. 2,711,817. This patent infringement case is based on defendant's "Milwaukee-Matic", which allegedly embodies the invention in the above patent.

After several depositions and interrogatories, defendant filed a motion for summary judgment with supporting affidavits, pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Defendant alleges the patent is invalid because the plaintiffs did not comply with 35 U.S.C. § 102(b), in that the invention was in public use or on sale more than one year prior to the date of application for patent.

█ The basic function of the summary judgment is, of course, to avoid a useless trial. If there is no genuine issue of fact concerning the above charge by the defendant, the court may then determine if defendant is entitled to a judgment as a matter of law. See Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 2 Cir., 1956, 233 F.2d 9.

The following are the facts as outlined by the defendant. Charles F. Hautau first sketched this invention at the Purchasing Department of the Ford Motor Company during the fall or winter of 1949. On July 27, 1950 Ford issued a purchase order to Aviation Tool and Gauge Company, Detroit, for purchase of a machine which incorporated in part this invention. Plaintiffs' firm designed the entire machine, for which Aviation Tool and Gauge Company was to pay them. Actual construction of the machine was eventually farmed out to Turner Bros., Ferndale, Michigan. During the construction of the machine, plaintiffs performed engineering and advisory services and took motion pictures of the operation of the completed machine.

The entire machine was released on January 22, 1952 for delivery, which was completed April 3, 1952, to the Ford plant at Cleveland, Ohio. Restrictions were at no time imposed upon anyone concerning the operation of the machine.

After the Ford machine was put into production (at least as early as October 1952) many difficulties were encountered, which, however, did not include the device embodying plaintiffs' invention. After limited use for two years, during which time plaintiffs' firm maintained contact for service consultation only, Ford withdrew it from production in November, 1954, and it was thereafter scrapped.

The purchase price at delivery ($47,948) was fully paid on April 25, 1952. However an additional sum of $8,694 was paid by Ford on November 10, 1954 as an "equitable price adjustment", reflecting changes made in the machine during its construction period.

Based on the above facts, defendant claims that the invention was in public use and on sale prior to June 1, 1953, a year before the patent application, and the existence of either of those conditions would necessitate the invalidity of the patent.

Plaintiffs' basic position is that summary judgment cannot be considered since there exists an issue of fact as to whether the device on the Ford machine embodied the identical and complete invention. The preamble of claim 6 of the patent, chiefly relied upon by the plaintiffs, characterizes the invention as a "loading *and* unloading mechanism for production machines" (emphasis added). It is true that there is evidence that the device in the Ford machine was used only to unload articles. However, defendant argues that even if we consider this introductory phrase as being of patentable import, the device on the Ford machine, by its nature, could load with the same procedure as unloading. Movies, which were taken by plaintiffs of the Ford machine, were shown to illustrate this. If nothing more were available, perhaps there would be a genuine issue of fact. However, answers by both plaintiffs, who are the co-inventors, in their depositions conclusively determine that the complete invention was embodied in the Ford machine. Charles F. Hautau was asked at page 90 in his deposition, taken July 26, 1960, whether the Ford machine embodied the invention. He answered an un-

equivocal "yes". Llewellyn A. Hautau, at page 30 of his deposition, while discussing the Ford machine, stated that "This is the first embodiment in iron of the subject invention." In answer to interrogatory No. 7(c) plaintiffs stated:

"The following machine embodying the subject invention was manufactured and sold by Turner Bros. Inc.: Ford Motor Co., purchase order No. PE–3321, shipped October 19, 1952." (The latter date was in error)

There is absolutely no evidence, by either expert or inventor, to indicate that the invention was not completely embodied in the Ford machine.

■■ Prior public use has long been a bar to patentability. Presently the public use must have occurred more than one year prior to application for patent. The policy of such a rule is to prevent an inventor from holding back the secrets of his invention, while at the same time exploiting it, and thereafter applying for a limited monopoly when faced with competition. Pennock v. Dialogue, 1829, 2 Pet. 1, 27 U.S. 1, 7 L.Ed. 327; Andrews v. Hovey, 1887, 123 U.S. 267, 8 S.Ct. 101, 31 L.Ed. 160.

■ The interpretation of "public use" is very broad. It has been said that public use exists where the invention is used by, or exposed to, anyone other than the inventor or persons under an obligation of secrecy to the inventor. See Egbert v. Lippmann, 1881, 104 U.S. 333, 26 L.Ed. 755. The courts have, however, engrafted onto the statute the exception that public use does not bar a patent when that use was incidental to experiment. Elizabeth v. Pavement Co., 1881, 97 U.S. 126, 24 L.Ed. 1000. Watson v. Allen, 1958, 103 U.S.App.D.C. 5, 254 F.2d 342. Thus the statutory period relating to public use will not run if it is for the purpose of testing the machine or in order to bring the invention to perfection.

In this case all of the facts point to the conclusion that after the machine was delivered to Ford and put on the assembly line during 1952, more than one year prior to the patent application, the device embodying the invention had ceased to be experimental and was thereafter in public use. The invention was first conceived for a definite commercial endeavor. There were at no times any restrictions placed on the use of the device embodying the invention. The plaintiffs received monetary return for their plans, which included the invention. The machine was used in a commercial line, which was widely visited because of its automation features. The plaintiffs never visited the Ford plant in order to "test" the device embodying the invention.

Plaintiffs make much of the fact that there was no "continuous" use of the machine because of breakdowns in operation. This fact is itself immaterial, except perhaps to indicate the experimental nature of the machine. Here, however, the unequivocal evidence is that the inventors were completely satisfied with their invention and its operation. This particular device, which included only a portion of the Ford machine, was therefore no longer experimental after it was put in operation, and only a single commercial use is required to qualify for public use. See Electric Storage Battery Co. v. Shimadzu, 1939, 307 U.S. 5, 59 S. Ct. 675, 83 L.Ed. 1071.

■ Therefore, the unconflicting facts clearly prove that the invention was in public use more than one year prior to the application for patent. On this basis, without deciding whether the machine was "on sale" more than one year before the application for patent, the motion for summary judgment is granted and the plaintiffs' patent, No. 2,711,817, is invalid and void.