## NA-MAC PRODUCTS CORPORATION v. FEDERAL TOOL CORPORATION et al.

### SAME v. SEARS, ROEBUCK & CO.

#### Nos. 167, 577.

District Court, N. D. Illinois, E. D.
Aug. 26, 1940.

Decree Affirmed March 11, 1941.

See 118 F.2d 167.

 

Glenn S. Noble and Casper Wm. Ooms, both of Chicago, Ill., for defendant Federal Tool Corp.

Harry H. Kahn and Frank H. Marks, both of Chicago, Ill., for defendant Sears, Roebuck & Co.

BARNES, District Judge.

The questions in this case are as to the right of the plaintiff to sue and the alleged infringement and validity of Pershall Patent No. 2,154,581, issued April 18, 1939, on an application filed June 2, 1937, Claims 4, 5 and 6 of which are in suit, and Pershall Patent No. 2,133,772, issued October 18, 1938, on an application filed May 9, 1938, Claim 4 of which is in suit. Plaintiff also charges unfair competition as against the defendant Sears, Roebuck and Co.

The defendants contend that the plaintiff did not have such rights in the patents in suit as authorized it to bring suits in chancery for infringement. The suit against Federal Tool Corporation and the Washburn Company was filed November 16, 1938. The suit against Sears, Roebuck and Co. was filed May 11, 1939.

Pershall assigned his applications for patents to Sanicut Manufacturing Company. These assignments are dated May 28, 1937, and June 22, 1938, respectively, and the patents were issued to Sanicut Manufacturing Company. Under date of October 3, 1938, the Sanicut Manufacturing Company licensed the plaintiff, Na-Mac Products Corporation, under the two applications which finally ripened into the patents in suit. While this contract purports to grant the exclusive right to make, use and sell devices embodying the inventions, it falls short of being an assignment in the following particulars: the licensee does not have power to make an assignment, voluntary or involuntary, without the consent of the licensor; certain trade-names are required to be used with articles embodying the inventions; and recoveries for infringements are required to be divided with the licensor. The court is of the opinion that this license agreement did not vest in the plaintiff sufficient title to permit it to bring the suits at bar. Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923; Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U.S. 24, 43 S.Ct. 254, 67 L.Ed. 516; Independent Wireless Telegraph Company v. Radio Corporation of America, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357. Subsequently, and under date of November 8, 1938, and April 20, 1939, the

Clarence J. Loftus and J. Rex Allen, both of Chicago, Ill., for plaintiff.

428

Sanicut Manufacturing Company made two assignments to the plaintiff, Na-Mac Products Corporation, of the patents in suit. However, each of the assignments provides:

"* * * that the terms and conditions set forth in the agreement heretofore entered into between Sanicut and Na-Mac on the 3rd day of Oct. 1938 as above mentioned, shall remain in full force and effect and shall be in nowise changed or modified by this agreement.

"It is further mutually agreed that this assignment is made in order that Na-Mac may bring and maintain suits for infringement in its own name without joining Sanicut as a party and that upon the termination of such litigation. Na-Mac will, upon written request from Sanicut, reassign the legal title of the patent to Sanicut."

In the court's opinion, these two assignments left the title in the same condition as did the license agreement of October 3, 1938. On May 17, 1939, the Sanicut Manufacturing Company entered into another patent license agreement with the plaintiff, Na-Mac Products Corporation, which in its terms is substantially the same as the patent license agreement of October 3, 1938, except as to the license fees to be paid. Another assignment from Sanicut Manufacturing Company to the plaintiff, Na-Mac Products Corporation, of the two patents in suit has been offered and received in evidence. It is significant that it is undated. It is acknowledged December 7, 1939,—after the controversy had arisen between the parties as to the right of the plaintiff to sue. In the court's opinion, the plaintiff did not have sufficient title, at the time the suits were started, to authorize it to bring the suits at bar, without the presence of Sanicut Manufacturing Company.

■ Do the defendants infringe Patent No. 2,154,581? On page 1, column 1, line 33, of this patent it is said: "Another object of my present invention is to provide means whereby downward pressure is applied to the extreme or closing end of the slide member during the closing operation."

The claims in suit read as follows:

° "4. In a dispensing device for a container having an open neck, the combination 'with a base secured on the· neck, a spout on said base, an air vent in said base, a closure for said spout adapted for sliding movement across said base and in alignment with the spout, *said base being closed adjacent to and rearwardly of the spout for protecting said slidable closure from the contents being dispensed,* means for guiding the closure in its sliding movement, a spring-pressed operating lever attached to the closure, and means associated with the lever for normally closing said air vent.

"5. In a combined cover and drip cutting device adapted for dispensing viscous liquids and to be readily attached to and detached from a container, comprising a combination, a base and cover member having a dispensing spout provided with a stationary drip shearing edge, *a resilient slidably mounted drip cutting member* adapted to slide directly against and across said stationary drip shearing edge, *said base being closed adjacent to and rearwardly of said spout for protecting said slidably mounted member against the contents being dispensed, means so arranged as to apply a downward pressure to the upper surface of said slidable member near its drip cutting edge,* means for rapidly and positively propelling said slidable drip cutting member across said stationary drip shearing member for cutting away the final drip, means for retracting said slidable member and a lifting handle secured to said base in line with said retracting means for lifting the said container.

"6. In a combined cover and drip cutting device adapted for dispensing viscous liquids and cutting away the final drip comprising in combination, a base and cover member having a dispensing spout provided with a stationary drip shearing edge, *a resilient slidably mounted drip cutting member* adapted to slide directly against and across said stationary drip shearing edge, *said base being closed adjacent to and rearwardly of the spout for protecting said slidably mounted member from the contents being dispensed, means for applying a downward pressure to the upper surface of said slidable member near its drip cutting edge,* means for rapidly and positively propelling said slidable drip cutting member across said stationary drip shearing member for cutting away the final drip, and means for manually retracting said slidable drip cutting member."

The elements of the claim which are italicized above are not found in the accused devices. The base is not closed rear-

wardly of the spout for protecting the slidable closure from the contents being dispensed. There is an air vent in the base rearwardly of the spout, and if the devices are not used carefully this air vent will permit the contents being dispensed to come in contact with the slidable closure. The accused devices do not have a resilient drip cutting member. The patent discloses that, in order to be effective and accomplish the purpose disclosed by the patent, the drip cutting member must be made of spring steel and must be resilient in the sense that spring steel is resilient. The drip cutting member in the accused devices is made of soft stainless steel which is not resilient in the sense of the patent. The patent requires and the plaintiff's device includes "means so arranged as to apply a downward pressure to the upper surface of the slidable member near its drip cutting edge." The accused devices do not have means so arranged as to apply a downward pressure to the upper surface of the slidable member near its drip cutting edge, and the calling of the top plate of the accused device a "pressure plate" does not bring it within the claims of the patent.

Claims 4, 5 and 6 of Patent No. 2,154,581 are not infringed.

▪ ██ Is Claim 4 of Patent No. 2,133,772 infringed? In this patent is found the following language:

At line 55, column 1, page 1: "where the blade passes over the discharge opening in the spout, the guideway is slightly raised or angularly disposed with respect to the remainder of the guideway so as to lift the forward end of the blade to cleanly shear the discharged viscous liquid and project or hurl it away from the spout."

At line 9, column 1, page 2: "This blade is of relatively thin and resilient metal and forms a movable or slidable shearing element which closely contacts the upper edge of the spout and co-acts therewith to shear off and forcibly hurl or propel the residue or final part of the sheared flow away from the spout and thereby eliminate or prevent dripping. In order to accomplish this novel function and result, the invention comprehends providing the upper edge of the spout with a slight rise or incline with relation to the plane of the guideway or channel."

At line 5, column 2, page 2: "By the present arrangement of the blade, guideway or channel, lugs and incline of the upper surface of the spout, the resilient outer end of the blade or slidable shearing member will be flexed by the lugs and maintained in close contact with the upper surface of the spout and stationary shearing edge."

At line 22, column 2, page 2: "The resilient blade or slidable shearing member may be readily removed by lifting the rear end 11 from the lug or projection 13 and rearwardly withdrawing the blade."

Claim 4 in suit reads as follows: "In a combined closure and drip shearing device adapted for dispensing viscous liquids, a guideway therein, a spout provided with a stationary shearing member aligned with a guideway, *a resilient shearing member slidably mounted in the guideway, one of said shearing members being inclined with respect to the other,* means for rapidly propelling the slidable shearing member through the guideway and over the stationary shearing member with its forward resilient end riding over the stationary shearing member to shear the dispensing liquid."

The elements of the claim which are italicized above are not found in the accused devices. It clearly appears from the quoted portions of the specifications of this patent that it contemplates that the shearing member shall be resilient and constructed of some such metal as thin resilient spring steel. The shearing member of the accused devices is constructed of soft stainless steel and is not resilient in the sense of the patent. The portions of the specifications of the patent above quoted indicate that the shearing member which is inclined with respect to the other is the top of the spout. The tops of the spouts in the accused devices are perfectly level. Furthermore, even if the reference in the claim to "one of said shearing members being inclined with respect to the other" is a reference to a "shearing member slidably mounted in the guideway," nevertheless this characteristic of one shearing member being inclined with respect to the other shearing member is not found in the accused devices. There was considerable controversy at the trial as to whether or not the shearing member in the accused devices is inclined. It is unquestionably true that the shearing members in some of the accused devices produced at the trial were inclined, but the drawings of the parts and the dies wherewith the parts are made clearly indicate that it is not intended that they should be inclined. The court is con-

vinced that it was not the intent of the defendant that any of the shearing members should be inclined.

The court concludes that Claim 4 of Patent No. 2,133,772 is not infringed.

■■ On October 2, 1930, Pershall filed in the United States Patent Office his application Serial No. 488,566, which ultimately ripened into the Pershall Patent No. 1,844,840. This application shows and refers to everything that is found in the claims of the patents in suit. The defendants cite this disclosure of Pershall as showing an abandonment by Pershall of the subject matter of his disclosure—this for the reason that Pershall acquiesced in the rejection of all his claims upon the device shown in his application and filed no application within two years of the date of the filing of the first application or within two years of the issuance of the patent thereon on October 25, 1932, when the file wrapper disclosing this cancelled specification became available to the public. The plaintiff contends that the fact that the disclosure is made in the file wrapper and not made in the specification of the patent as issued renders the doctrine of abandonment not available to defendants. The court does not agree with this contention of the plaintiff. The patent law does not contemplate that an inventor may disclose in an application the best mode of applying the principle which he has ·invented, strike that disclosure from his application, acquiesce in the rejection of all claims upon that disclosure, secure a patent upon some part of his invention, and then hold off the public until he chooses to file another application for the subject matter thus disclosed and not claimed. The patent statute reserves that right to the inventor for a limited time only, and Pershall did not act within that limited time. The court is of the opinion that the defense of abandonment must be sustained.

■ In 1934 and 1935 the Sanicut Manufacturing Company manufactured and sold a device which is structurally identical with the devices shown in the two patents in suit, except for the openings beneath the guideway. Plaintiff contends that this work, done in 1934 and 1935, was purely experimental and therefore does not constitute a prior use. However, dies were made at considerable expense and not less than 9000 devices were manufactured and disposed of. There was considerable testimony by the witness Hacmac to the effect that the device sold by the Sanicut Sales Company, in 1934, was a failure. Hacmac was not a satisfactory witness; he gave the impression that he was entirely too willing to testify to what seemed to be needful. The closing of the guideway beneath the lugs is an obvious expedient which would occur to any mechanic and would not constitute invention. The court is of the opinion that the work in 1934 and 1935 cannot be held to have been merely experimental, and, on the contrary, must be held to have been a prior use.

■ The defendants introduced a number of patents in evidence but they do not contend that any of them anticipates the specific terms of the claims in suit. These patents do show that the use of a sliding blade across the spout of a syrup container to cut off flow and prevent drip is seventy years old. A number of the patents introduced disclosed the so-called "molasses gate"—a faucet with a sliding gate pressed against the face of the spout to insure a snug fit between the gate and the lip of the spout. A number of the patents introduced disclosed the idea of having a sliding closure on top of a vessel, operated by a thumb lever back of the container. The Nuckols device of which 40,000 or 50,000 were sold thirty years ago was introduced in evidence. The court does not believe that the claims in suit disclose any invention over this prior art.

The foregoing is written with a full realization that if the court is correct in respect of any one of the foregoing propositions, namely, want of capacity to sue, abandonment, prior use, noninfringement, or invalidity because no invention disclosed, there is no necessity for the discussion of the other propositions, but the foregoing is written also with a full realization that a reviewing court might not agree with this court on the one proposition which this court might choose to consider and that the reviewing court might like an expression by this court on the propositions which it would then be compelled to consider.

The alleged unfair practices of the defendant Sears, Roebuck and Co. were due to what the court is convinced was an inadvertence in making up the· 1939 spring and summer catalogs. The element of fraudulent intent was lacking. The failure to maintain prices is complained of, but there was no contract to maintain prices. As a matter of fact, the plaintiff was advised that Sears, Roebuck and Co. could

not maintain prices. There was no unfair trade.

Counsel for the defendants may prepare and, within ten days, present drafts of findings of fact, conclusions of law and a decree not inconsistent with the views herein expressed. Counsel for the plaintiff may, within fifteen days, submit, in writing, such suggestions as they may have in respect of the drafts of findings, conclusions and decree presented by counsel for the defendants. Counsel for the defendants may, within twenty days, submit such written reply as they may deem advisable. Thereupon, the matter will be taken by the court on such drafts, suggestions and reply.