**NA-MAC PRODUCTS CORPORATION v. FEDERAL TOOL CORPORATION et al.**

**SAME v. SEARS, ROEBUCK & CO.**

No. 7413.

Circuit Court of Appeals, Seventh Circuit.

March 11, 1941.

Clarence J. Loftus and J. Rex Allen, both of Chicago, Ill., for appellant.

Casper W. Ooms, Harry H. Kahn, and Glenn S. Noble, all of Chicago, Ill., for appellees.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a decree entered May 6, 1940, in a cause consolidating two suits brought respectively against (1) Federal Tool Corporation, (hereinafter called "Federal") and the Washburn Company, (hereinafter called "Washburn") and (2) Sears, Roebuck and Company, (hereinafter called "Sears"). The complaint in the first case charged patent infringement only, and in the second case, patent infringement and unfair competition.

Two patents are involved, namely: No. 2154581, (hereinafter called the "first patent") applied for June 2, 1937, and issued April 18, 1939, and No. 2133772, (hereinafter called the "second patent") applied for May 9, 1938, and issued October 18, 1938. The application for both patents was by one Pershall, who made assignments to the Sanicut Manufacturing Company, (hereinafter called "Sanicut") to whom the patents were issued. Both patents relate to closure devices for syrup pitchers and the like, in which the pouring spout is opened and closed by sliding a resilient blade across the spout mouth.

The District Court filed a memorandum opinion, in which all the involved issues are fully considered. Findings of fact and conclusions of law were likewise filed by the court. In conformity with such opinion, findings and conclusions, the complaints were dismissed for want of equity. All issues were decided adversely to the plaintiff. The court held: (1) That the patents were invalid on the grounds that the subject matter thereof (a) had been previously abandoned by the patentee, (b) had been in prior public use by the owners of the patents more than two years prior to the filing of the applications for the patents in suit, and (c) lacked invention over the prior art, (2) that there was no

infringement, and (3) that the plaintiff lacked the title necessary to maintain the suits. It was also held that there was no unfair competition by Sears.

The issues before the District Court, decided adversely to the plaintiff, are those with which we are now confronted.

The suit against Federal and Washburn was filed November 16, 1938, for infringement of the second patent. Subsequently, on June 26, 1939, plaintiff filed an amended and supplemental complaint upon both patents. Thereupon, plaintiff dismissed its complaint upon which it had first brought suit, whereupon defendants amended their answer to restore that patent to the litigation by a petition for declaratory judgment. Pursuant to a stipulation, the suit was then tried upon both patents. The second patent is admittedly a continuation of the application for the first patent. The distinction between the patents, as hereinafter pointed out, is slight, and we think it may be safely said that their validity must stand or fall together.

There are four claims involved in suit —Claims 4, 5, and 6 of the first patent, and Claim 4 of the second patent. Plaintiff treats Claim 5 of the first patent as typical, and analyzes said claim, as follows:

"In a combined cover and drip cutting device adapted for dispensing viscous liquids and to be readily attached to and detached from a container, comprising in combination,

"(a) a base and cover member,

"(b) a dispensing spout provided with a stationary drip shearing edge * * *

"(c) a resilient slidably mounted drip cutting member adapted to slide directly against and across said stationary drip shearing edge * * *

"(d) a base being closed adjacent to and rearwardly of said spout for protecting said slidably mounted member against the contents being dispensed.

"(e) Means so arranged as to apply a downward pressure to the upper surface of said slidable member near its drip cutting edge,

"(f) means for rapidly and positively propelling said slidable drip cutting member across said stationary drip shearing member for cutting away the final drip,

"(g) means for retracting said slidable member,

"(h) a lifting handle secured to said base in line with said retracting means for lifting the said container."

Claims 4 and 6 apparently contain no element of importance, in addition to those found in Claim 5, except Claim 4 calls for "an air vent in said base." Claim 4 of the second patent contains this additional feature: "One of said shearing members being inclined with respect to the other." We think at this point it will be helpful to insert certain illustrations as shown in the patents. We use those disclosed in the second patent, which, for all practical purposes, illustrate the elements found in the claims of both patents.

curvature or shearing edge of the blade; 11 the rear end of the blade, provided with a slot 12 for receiving a lug or upward projection 13, on the trigger or lever 14, pivotally mounted upon a pin 15 spanning a bifercated bracket 16 of the closure. This trigger or lever 14, with a spring-like arrangement is attached to a handle 23. Thus, it is seen that when the apparatus is in operative condition, as disclosed in Fig. 2, the liquid is dispensed through the spout, and when it is desired to terminate the flow, the shearing blade 9, operating in the guideway 7, closes the spout and, in doing so, the forward end of this member, closely in contact with the

Fig. 1 is a perspective view of the apparatus applied to the neck of a bottle. Fig. 2 is a similar view tilted to a position for pouring with the blade or movable shearing member removed. Fig. 3 is a similar view of the blade or shearing member. Pertinent parts of the apparatus are described thus: 1 the apparatus mounted upon a bottle 2; 5 the dispensing spout formed at its exterior with an outer arcuate lip 6; located centrally in the cover or base is a guideway or channel 7, aligned with the lip and provided with inwardly projecting lugs 8, adapted to form retaining and guiding members for a blade or shearing member 9; 10 discloses the

edge of the spout, suddenly cuts off the flow. This function is called a shearing of the flow and the two members, i. e., the blade and the edge of the spout, are referred to as shearing members. The alleged invention, and that which it is claimed distinguishes it from similar preceding apparatuses, is, that by this means the flow is sheared off or terminated with such abruptness as to prevent a dripping of the liquid.

We shall first consider the finding of the District Court that the patents are invalid on the grounds that the subject matter thereof had been previously abandoned by the patentee. The controversy in this

respect, as well as the court's conclusion, is aptly stated in its memorandum opinion,[1] as follows: "On October 2, 1930, Pershall filed in the United States Patent Office his application Serial No. 488,566, which ultimately ripened into the Pershall Patent No. 1,844,840. This application shows and refers to everything that is found in the claims of the patent in suit. The defendants cite this disclosure of Pershall as showing an abandonment by Pershall of the subject matter of his disclosure—this for the reason that Pershall acquiesced in the rejection of all his claims upon the device shown in his application and filed no application within two years of the date of the filing of the first application or within two years of the issuance of the patent thereon on October 25, 1932, when the file wrapper disclosing this cancelled specification became available to the public. The plaintiff contends that the fact that the disclosure is made in the file wrapper and not made in the specification of the patent as issued renders the doctrine of abandonment not available to defendants. The court does not agree with this contention of the plaintiff. The patent law does not contemplate that an inventor may disclose in an application the best mode of applying the principle which he has invented, strike that disclosure from his application, acquiesce in the rejection of all claims upon that disclosure, secure a patent upon some part of his invention, and then hold off the public until he chooses to file another application for the subject matter thus disclosed and not claimed. The patent statute reserves that right to the inventor for a limited time only, and Pershall did not act within that limited time. The court is of the opinion that the defense of abandonment must be sustained."

Plaintiff disputes that Pershall's application, filed October 2, 1930, ultimately ripened into Patent No. 1,844,840. The fact is, as we understand the record, that the specification, claim, and drawings of that application were cancelled and a new specification, claim and drawings were substituted therefor. No second application, however, was filed, and we think it is correct to say that the patent was issued upon the original application, but with a different specification and claim.

We think it is also true, as contended by the plaintiff, that the claims in the patent, as issued, are directed largely to the operating handle and its connection with the sliding cover. It would appear, however, that there is no relevancy in this point, as the defense of abandonment is predicated upon the disclosure contained in the specification and claims as originally filed, rather than upon the claims of the patent as issued. It is insisted by the defendants that the court below was correct in holding that such disclosure includes all of the essential features found in the claims in suit.

A model constructed in conformity with this disclosure was introduced in evidence. It shows a closure with a spout or dispenser, the lip of which is inclined or raised so that the resilient steel blade is forced firmly against the lip of the spout. The flange by which the resilient blade is held against the spout extends to a position near the drip-cutting edge, so that pressure is applied to such blade so that it will be held against the lip of the spout as the latter is closed. The pivot on which the thumb lever operates is spaced away from the wall of the cap, so that as the thumb lever is operated, the rear end of the blade is necessarily lifted above the plane of the guideway, thus flexing the blade. This device was operated in court and it was demonstrated that it would pour liquid without a drip.

Plaintiff it its brief treats of each of the essential elements of Claim 5, (heretofore analyzed) and endeavors to distinguish between what is now claimed and that which was formerly disclosed. As to element (a), "a base and cover member," it is pointed out that the patents in suit provide for an actual base, as well as a cover member, and not merely a stamped cover member as is shown in Pershall's abandoned and discarded disclosure. It is true, plaintiff's commercial device does not have a stamped cover member, but that is of little benefit to the plaintiff in view of the fact that the first patent in suit disclaims any such distinction. In referring to the cover member, it states: "It may be diepressed from sheet material, or it may be molded from any of the various materials that lends itself to pressure molding or, more preferably, it may be made by die casting from a suitable metal." It is also argued that the base of the apparatus in suit is distinguished from the former dis-

---

[1] The formal findings of fact and conclusions of law entered by the court are in conformity with this opinion.

closure as having an actual spout in place of what is termed an outwardly pressed lip. In one of the rejected claims, it is described as the dispensing end of the dispenser. We are unable to discern what difference it makes whether the part of the apparatus through which the liquid flows is termed a spout, an outward lip, or the dispensing end. It appears certain that by whatever name it be called, the same function was served.

Element (b) of the claim under consideration provides: "A dispensing spout provided with a stationary drip shearing edge." The former disclosure, as stated, terms it a dispensing end with a slight raise. Plaintiff contends that the former disclosure made no reference to a shearing edge, and that the edges of the spout in the patents in suit are shearing members. Again we are of the view that this claimed distinction is more fanciful than real. It appears to us that when the blade passes over the dispensing edge, a shearing effect will be the result, whether that edge be called a spout or something else.

The element (c), consisting of a resilient cutting member, is clearly shown in the former disclosure.

The element (d), providing for a closed base rearwardly of said spout for the purpose of protection against the contents being dispensed, is the only element not formerly disclosed. The District Court was of the view that the mere inclosure of the underneath part of the guideway would readily occur to one familiar with the apparatus. In fact, there is considerable contrariety among the witnesses as to whether this is a desirable feature.

Element (e), "means so arranged as to apply a downward pressure to the upper surface of said slidable member near its drip-cutting edge" is plainly shown in the former disclosure.

Elements (f), (g) and (h), having to do with the means and manner of operating the drip-cutting blade across the spout or dispensing portion of the apparatus, are also shown.

Plaintiff contends that the disclosures made by Pershall in the specification and claims filed by him in the Patent Office in 1930, can not be utilized as the basis for an abandonment of the subject matter thereof. We do not believe this position is tenable. As was said in United States Rifle & Cartridge Company v. Whitney Arms Company, 118 U.S. 22, 25, 6 S.Ct. 950, 951, 30 L.Ed. 53: " * * * An inventor whose application for a patent has been rejected, and who, without substantial reason or excuse, omits for many years to take any step to reinstate or renew it, must be held to have acquiesced in its rejection, and to have abandoned any intention of further prosecuting his claim."

See Electric Storage Battery Company v. Shimadzu, 307 U.S. 5, 15, 59 S.Ct. 675, 83 L.Ed. 1071; Shipp v. Scott School Township, 7 Cir., 54 F.2d 1019, 1021. We are of the opinion that the court below properly sustained the defense of abandonment.

We shall consider the court's conclusion with reference to the defense that the subject matter of the patents in suit had been in prior public use by the owners of the patents more than two years prior to the filing of the applications therefor. Regarding this defense, the court said, 36 F.Supp. 426, 430: "In 1934 and 1935 the Sanicut Manufacturing Company manufactured and sold a device which is structurally identical with the devices shown in the two patents in suit, except for the openings beneath the guideway. Plaintiff contends that this work, done in 1934 and 1935, was purely experimental and therefore does not constitute a prior use. However, dies were made at considerable expense and not less than 9000 devices were manufactured and disposed of. There was considerable testimony by the witness Hacmac to the effect that the device sold by the Sanicut Sales Company, in 1934, was a failure. Hacmac was not a satisfactory witness; he gave the impression that he was entirely too willing to testify to what seemed to be needful. The closing of the guideway beneath the lugs is an obvious expedient which would occur to any mechanic and would not constitute invention. The court is of the opinion that the work in 1934 and 1935 cannot be held to have been merely experimental, and, on the contrary, must be held to have been a prior use."

In February, 1934, Pershall and his associates, operating as Sanicut, ordered dies to manufacture syrup dispensers which were finished in July, 1934. Approximately 9,000 Sanicut devices were made and sold, of which more than 5,000 were de-

livered prior to June, 1935, more than two years prior to the first of the applications for the patents in suit. A large number of specimens of the Sanicut device were before the court below, as well as here. One such specimen was an original sample used by a salesman in 1935. Another specimen was made for Sanicut and sold by it in 1934. Another specimen, made in 1934, was produced by a witness who had built the tools used in the manufacture of such devices. Also, of course, were specimens of devices made according to the patents in suit. The court heard the testimony of numerous witnesses who compared these prior use devices with those of the patents in suit. A study of the record, as well as the physical exhibits, is convincing that the court properly determined this issue.

It would serve no useful purpose to enter into a detailed discussion of what plaintiff claims as invention over this prior use. The contention chiefly relied upon to overcome such use is that the devices sold by Sanicut in 1934, were failures, and nothing more than of an experimental character. Upon this premise it is argued that there was no such public use as would invalidate the patents. There are two answers to this contention: (1) It is largely, if not entirely, a question of fact which the District Court has determined adversely to plaintiff's contention, and (2) we are satisfied, from our own study of the testimony, that such devices were not only widely sold in the ordinary course of trade, but that they generally gave satisfactory service. In fact, there is some testimony that they were of a more satisfactory nature than the devices made according to the patents in suit. We agree with the District Court in its conclusion that the patents are invalid because of this prior public use.

In view of the conclusion thus far reached, there appears to be no occasion to consider the prior art also alleged and found by the District Court to invalidate the patents, the matter of infringement, or the question of plaintiff's title.

We shall now consider the charge against Sears of unfair competition. Plaintiff manufactured and sold its device under the trade name of "Dripcut," at a standard price of $1 per article. In the fall of 1937, an arrangement was made by which Sears was to sell plaintiff's syrup pitcher, and it was listed in the fall catalog of 1937, and again in the spring and fall of 1938. It was listed as a "Drip Cut Syrup Jug" at a price of 79¢. In the fall of 1938, Sears had decided to sell, instead of plaintiff's pitcher, a syrup jug manufactured by Federal and Washburn. Orders were issued to all its central stores and buying offices to the effect that it was changing its source of supply for syrup jugs. The change was to appear in the catalog then being prepared for the spring of 1939. The article was listed in the 1939 catalog in bold faced type "Syrup Jug" at a price of 79¢. In small print, it was further described as a dripless syrup dispenser which cuts off the flow without dripping. In connection with this description was a cut of plaintiff's jug as had been formerly used. The cut was about an inch high among cuts of scores of other articles appearing upon the same page in a catalog that contained more than 1000 pages. It is the contention of Sears that the use of this cut was the result of a mistake in the preparation of its catalog, and one of its executives expressed surprise when it was called to his attention. It is the plaintiff's theory that this was a deliberate act on the part of Sears to mislead the public into believing that the pitcher advertised in its 1939 catalog was the same as the plaintiff's pitcher which had previously appeared therein, and that, as a matter of fact, the pitcher was sold to the public as that of the plaintiff's. It is also contended by the plaintiff that there was an agreement between it and Sears as to the maintenance of a specified price at which the pitcher was to be sold, and that Sears listed the pitcher at a lower price.

The only testimony bearing upon the charge of deception was from witnesses who had been prompted by plaintiff's counsel to order from the 1939 catalog. The orders were not prepared by the witnesses and it appears that generally such witnesses thought they were merely ordering a "syrup jug." Typical of such letters is one as follows: "Please send me syrup jug shown in your spring and summer catalog on page 634." Others requested a "Drip Cut" syrup jug as shown on a certain page of the catalog. Sears filled such orders with the "Syrup Jug" as described in the catalog. It was not, however, the "Drip Cut" dispenser of plaintiff. The District Court, in its opinion, stated: "The alleged unfair practices of the defendant Sears, Roebuck and Co. were due to what the court is convinced was an inadvertence

in making up the 1939 spring and summer catalogs. The element of fraudulent intent was lacking. The failure to maintain prices is complained of, but there was no contract to maintain prices. As a matter of fact, the plaintiff was advised that Sears, Roebuck and Co. could not maintain prices. There was no unfair trade."

Findings of Fact were accordingly made, which we think are substantially supported by the record. Sears' catalog sales of plaintiff's pitcher amounted to approximately $2,000, while its sales of the Federal pitcher amounted to a total of $1,195, with a profit of $35. It is unreasonable to believe that there was any purpose on its part, either to deceive the public, or unfairly compete with the plaintiff in the sale of the dispenser. Furthermore, we doubt if the situation was calculated to deceive the purchasing public. Assuming that plaintiff's trade name "Dripcut" was valid, it is to be noted that the dispenser was listed in the catalog under the title "Syrup Jug." The latter term is one of description and its use would not constitute infringement or unfair trade practice. Whatever merit there may be in plaintiff's contention must rest solely upon the design disclosed rather than upon the term applied. In the manner in which it appears in defendant's catalog, we are of the opinion that it would be extremely difficult to recognize it as that of the plaintiff. Without such recognition, it is difficult to perceive how either the purchasing public could have been misled, or the defendant benefited by the display of plaintiff's design.

Plaintiff argues that the defendant's intention of good faith can not be utilized as a defense in a case of this character. While there is authority which apparently sustains that argument, there is also authority to the contrary, which, in our judgment, should be applied in the instant situation. In Coats v. Merrick Thread Co., 149 U.S. 562, 569, 13 S.Ct. 966, 968, 37 L. Ed. 847, the court said: " * * * We think the defendants have clearly disproved any intention on their part to mislead the dealers who purchase of them. Indeed, such dealers could not possibly fail to know what they were buying; and the fraud, if any, was practiced on the buyer of a single or a small number of spools, who might be induced to purchase the thread of the defendants for that of the plaintiffs."

This court, in Feil Company v. Robbins Company, 7 Cir., 220 F. 650, considered a case in some respects similar to the instant one. There the defendant was charged with infringing the trademark "Sal-Vet" and with unfair competition by use of the mark "SalTone." On the charge of unfair competition, it was disclosed that the defendant paraphrased complainant's circulars and other advertising, including its cuts and pictorial matter, and that it followed complainant in the use of blank order forms, or coupons. In that case, as here, the complainant caused decoy orders sent to the defendant asking for "Sal-Vet," which orders were filled by the defendant with "SalTone." The court, in affirming a decree dismissing the complaint, on page 653 of 220 F., said:

" * * * There was no bad faith in using the order forms or coupons, since these are shown to be in common use in the mail order business. With the exception of the five decoy orders sent by parties under complainant's direction, and filled by sending 'SalTone,' it does not appear that defendant's object was to secure complainant's trade unfairly. * * *

"There is shown no imposition upon nor complaint by the public with regard to the five decoy orders. It appears that no one was defrauded or deceived.

"The goods shipped to fill the same, while of similar packages to those of complainant, in shape, were plainly marked 'SalTone,' and carried in distinct form and colors the notice that they were made by the defendant, as did all defendant's other goods on the market. * * * "

So, in the instant case, proof is lacking that the public was deceived into purchasing as plaintiff's product, that which was not. There was no fraud and no intention to deceive. There may be cases where the acts and conduct of a tradesman, without intent to deceive, may result in unfair competition. If so, in our judgment, this is not one of such cases. We agree with the District Court that the evidence is insufficient to sustain the charge of unfair competition.

It therefore follows that the District Court properly dismissed the bill of complaint, and its decree is affirmed.