31 C.C.P.A.(Patents)

## In re SHORTELL.

### Patent Appeal No. 4901.

Court of Customs and Patent Appeals.
April 4, 1944.

Frederic P. Warfield, of New York City, for appellants.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This appeal presents a question as to whether an improvement made by appellant in a hack saw blade was inventive. The Board of Appeals of the United States Patent Office affirmed a decision by the Primary Examiner rejecting five claims of appellant's application for a patent upon the ground of lack of patentability over the prior cited art.

Certain claims were rejected by the examiner which were later withdrawn.

Claims 14 and 21 are illustrative of the subject matter of the claims, and read as follows:

"14. As a new article of manufacture, a hack saw blade provided with cutting teeth of substantially the same size and shape along both edges thereof, the teeth along one edge being set to a lesser degree than the teeth along the other edge, and means for indicating the edge bearing the teeth having the greater degree of set."

"21. As a new article of manufacture, a hack saw blade provided with cutting teeth of substantially the same size and shape along both edges thereof, both rows of teeth being set and ready for sawing, the teeth along one edge being set to a lesser degree than the teeth along the other edge."

It will be observed from quoted claim 14 that it has one element not recited in quoted claim 21, viz., "means for indicating the edge bearing the teeth having the greater degree of set." This limitation is also contained in claim 15.

The references cited are:

Clemson, 336,697, February 23, 1886.
Szekely, 511,473, December 26, 1893.

Appellant's alleged invention is the element of the claims above quoted reciting that the teeth along one edge of the blade are set to a lesser degree than the teeth along the other edge.

The purpose of having the set of teeth wider upon one edge of the blade than the set of teeth upon the other edge is that while cutting through metal the edge having the narrower set will not drag upon the sides of the kerf and thus be dulled as the saw passes through the metal. When the teeth upon the edge having the wider set become worn the blade is reversed, and the teeth having the narrower set continue the work, thus substantially prolonging the life of the saw.

The reference Clemson discloses a hack saw blade having teeth on its opposite edges so that the edges may be reversed when one of them becomes worn from use. Nothing in the patent suggests that the teeth on the opposite edges should have different sets, and presumably the sets on both edges are of the same width. It will be observed that this patent was issued in 1886.

The reference Szekely discloses an ordinary saw blade having cutting teeth upon one edge of the blade and planing teeth of a wider set upon the opposite edge. The patent states:

"My invention relates to saw-blades and has for its purpose to provide a saw-blade that will not only act as an ordinary saw but will at the same time smooth the rough surfaces of the cut. To this end I have devised a saw-blade provided with the ordinary cutting teeth and equipped at the opposite edge with planing teeth that will smooth the rough surfaces of the cut during the motion of the saw."

There are a number of letters in the record from users of appellant's saws and dealers in machine tools indicating the novelty, utility, and commercial success of appellant's saw.

The record also contains an affidavit of appellant stating that he is the manager of the saw department of Millers Falls Company, of Greenfield, Mass., the assignee of his application; that he has been engaged in the manufacture of hack saw blades for 23 years; that he is familiar with the reference Clemson patent; that to the best of his knowledge and belief no blade corresponding to the disclosure of that patent was ever put upon the market, and that such a blade would be impractical because the two sets of teeth would saw and wear simultaneously and, therefore, the life of the saw would not be increased.

The "Examiner's Statement" on appeal states:

"Claims 7, 13, 17 and 21 are held unpatentable over Clemson, No. 336,697 in view of Szekely. The claims read directly on the Clemson patent with the exception of the unequal set of teeth on the opposite edges of the saw. Since this feature is clearly shown in Szekely, it is only obvious to apply such an arrangement to the teeth in the Clemson patent.

"Claims 14 and 15 are held unpatentable on the ground of aggregation. There is no interdependent relation between a printing arrangement and specific hack saw structure.

"Claims 14 and 15 are further rejected on the same grounds stated against claims 7, 13, 17 and 21. It is held not to add novelty to any article of manufacture to add such instructions as 'this side up', 'use this edge first', etc. to the article. Such printed instructions do not come within the purview of the patent statutes. See In re Reeves [62 F.2d 199], C.D.1933, page 111."

The Board of Appeals in its decision with respect to claims 13, 17, and 21 stated:

"Claims 13, 17 and 21, which do not include the indicia, have been rejected as unpatentable over Clemson in view of Szekely. The examiner observes that Clemson discloses a hack saw blade having teeth on both edges but so far as shown, the teeth on the two edges have the same degree of set. The collateral reference Szekely discloses a saw blade having teeth on both edges, the teeth on one side having very markedly wider set than on the other.

Szekely's blade, however, is not a simple sawing blade on one side but the teeth have cutting edges on their sides to enable them to smooth the walls of the kerf while probably cutting it wider."

With respect to claims 14 and 15 the board said:

"Claims 14 and 15 have been rejected upon the same citations as unpatentable in merits with the additional ground that there is not sufficient nor any interdependence between the cutting teeth and the legend as to constitute a true combination and besides that the legend if considered in the sense of printed matter, cannot be taken into consideration under the patent practice because it relates to printed matter. We affirm the holding that these claims do not set forth invention over the state of the art."

The board disagreed with the examiner's additional rejection of claims 14 and 15 upon the ground of aggregation.

■ We are in agreement with the board for the reasons stated by it that the legend upon the saw blade indicating which edge was to be first used does not aid patentability of the claims.

Therefore, the only question of patentability is whether the providing of a wider set of teeth upon one edge of the blade than that given the teeth upon the opposite edge constituted invention.

We are not in accord with the views of the Patent Office tribunals that the patent to Szekely has any relevancy to the question before us. It is manifest that his saw blade could not be reversed and the planing teeth used for cutting the material. Their only purpose is to smooth the rough surfaces of the cut during the motion of the saw, and both edges of the blade perform their respective functions simultaneously.

We find nothing in the Szekely patent that would in any way suggest to one skilled in the art the modification of the saw blade disclosed by Clemson by giving a greater degree to the set of the teeth upon one edge of the blade than is provided for the teeth on the other edge.

The board, however, stated that irrespective of the disclosure of Szekely it believed that "it is obvious to anyone that if it should be found that the teeth on the rear edge when of the same width of set, bind in the kerf, that this would be remedied by very slight increase of set on the advance edge."

We are very reluctant to disagree with the Patent Office tribunals upon a question of what is obvious to one skilled in the art, but in this case we do not believe that they gave sufficient consideration to the facts of record.

If the record disclosed as prior art only a saw blade having teeth of the same set in its opposite edges, such as is disclosed by Clemson, we might well agree with the Patent Office tribunals that giving the teeth on one edge of the blade a wider set than the teeth upon the opposite edge would be obvious to one skilled in the art, but there is in the record more than the disclosure of the Clemson patent that must be considered. It was issued in 1886 and expired in 1903 so that for more than forty years the public had been free to use the blade there disclosed and improve it in any way that would be obvious to one skilled in the art. It may be that, as suggested in the record, Clemson's saw was impracticable because the teeth upon both edges had the same set, but the record fairly discloses that during the more than fifty years since the date of the patent, and forty years since the public was free to use it, appellant was the first to discover that the saw disclosed by Clemson could become of great utility by giving the teeth upon one edge of the blade a wider set than the teeth upon the other edge.

The letters in the record not only indicate great utility of appellant's saw, but also clearly indicate that appellant was the first to discover the improvement for which he seeks a patent. If this improvement was obvious to one skilled in the art, as held by the Patent Office tribunals, it seems to us that sixty years would not have elapsed before it was made.

The letters referred to are in some respects far more laudatory than the facts seem to warrant, but we do attach importance to the fact that appellant's improvement was regarded by manufacturers who use hack saws, and by dealers in them, as an important discovery.

For the reasons stated, we are not in accord with the views of the Patent Office tribunals that appellant's improvement over Clemson would be obvious to one skilled in the art.

Appellant's brief does not discuss the question last hereinbefore considered, ex-

cept inferentially under the heading "Flash of Genius." Under this heading he refers to "Patent Jurists" who are using this term as a necessary element to constitute invention, and insists that appellant's improvement measures up to this high test.

We do not find it necessary here to decide whether appellant's improvement resulted from a "flash of genius" or not, assuming that the term means a higher standard of invention than had been for many years required. The Supreme Court, for more than a hundred years, held, and this court since it acquired the patent jurisdiction which it now possesses, following the decisions of its predecessor in this jurisdiction, the Court of Appeals of the District of Columbia, has held that when patentable subject matter is properly applied for and claimed, it is patentable if the thing claimed was not anticipated, was not obvious to one skilled in the art, and the other conditions named in section 4886 of the Revised Statutes (U.S.C., title 35, sec. 31, 35 U.S.C.A. § 31) are met.

While much has been said by the Supreme Court regarding the impossibility of finding any affirmative formula by which invention may be defined, we have found no case in that court which declared a patent invalid where the question of what constitutes invention was the sole question involved, and the court had found that the thing patented was neither anticipated nor obvious to one skilled in the art.

In the case of McClain v. Ortmayer, 141 U.S. 419, 12 S.Ct. 76, 78, 35 L.Ed. 800, the court said:

"Courts, adopting fixed principles as a guide, have by a process of exclusion determined that certain variations in old devices do or do not involve invention; but whether the variation relied upon in a particular case is anything more than ordinary mechanical skill is a question which cannot be answered by applying the test of any general definition."

In the case of Hotchkiss et al. v. Greenwood et al., 11 How. 248, 267, 52 U.S. 248, 13 L.Ed. 683, decided in 1850, frequently referred to as the "Porcelain door knob case," the court said:

"* * * for unless more ingenuity and skill in applying the old method of fastening the shank and the knob were required in the application of it to the clay or porcelain knob than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other words, the improvement is the work of the skilful mechanic, not that of the inventor."

The above cases have been cited by that court with approval a great many times.

Until very recently the decisions of all courts having jurisdiction over patent matters have uniformly held that if the thing patented involved patentable subject matter, was useful and was not anticipated by the prior art nor obvious to one skilled in the art, it evidenced invention and was patentable, other conditions prescribed by the statute necessary to patentability being present.

Congress has frequently amended section 4886, supra, but has never seen fit to require higher standards for the determination of invention than those so frequently declared by the courts. It, therefore, seems to us that the rule of legislative adoption of judicial decision is applicable, and the standards declared by the courts previous to such amendments have become the settled law not subject to judicial repeal. See Electric Storage Battery Co. v. Shimadzu et al., 307 U.S. 5, 613, 616, 59 S.Ct. 675, 83 L.Ed. 1071.

Much controversy has arisen concerning the interpretation of certain language in the case of Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 41, 86 L.Ed. 58, wherein, following the citation of a number of cases, the court said:

"* * * That is to say the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain."

It is interesting to note that all of the cases cited by the court preceding the above quotation were decided upon the familiar basis of whether the thing patented involved more than the skill of the art involved. In view of this fact, we are of the opinion that the use of the term "flash of creative genius," above quoted, was intended to mean nothing more than that the thing patented must involve more than the skill of the art to which it relates.

In the case of Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632, 636, 53 U.S.P.Q. 563, the court said:

"We cannot, moreover ignore the fact that the Supreme Court, whose word is final, has for a decade or more shown an increasing disposition to raise the standard of originality necessary for a patent. In this we recognize 'a pronounced new doctrinal trend' which it is our 'duty, cautiously to be sure, to follow, not to resist.' "

■ While recognizing, of course, that it is the duty of this court to follow the law as declared by the Supreme Court, we do not conceive it to be our duty to change our basis of decision merely because some courts assume that there is a "new doctrinal trend" with regard to the standards required for invention.

■ In our opinion it is not within the province of the courts to establish new standards by which invention is to be determined. It seems clear to us that the creation of new standards for the determination of what constitutes invention would be judicial legislation and not judicial interpretation.

It follows, from the foregoing, that until Congress shall otherwise legislate, or the Supreme Court shall otherwise specifically hold, this court will continue to hold that if a process or thing constitutes patentable subject matter, is new and useful, and the process performed or thing produced would not be obvious to one skilled in the art, invention should be presumed and a patent may properly issue therefor.

■ Inasmuch as in the case at bar we have found that appellant's improvement in hack saws as claimed is not anticipated by the cited prior art and such improvement would not be obvious to one skilled in the art, the decision appealed from is reversed.

Reversed.

GARRETT, Presiding Judge, did not participate in the consideration or decision of this case.