33 C.C.P.A.(Patents)

## In re CRAWFORD.

### Patent Appeal No. 5087.

Court of Customs and Patent Appeals.

April 1, 1946.

Elwin A. Andrus, of Milwaukee, Wis. (Merl E. Sceales, of Madison, Wis., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

The Board of Appeals of the United States Patent Office affirmed a decision of the Primary Examiner rejecting all of the claims of appellant's application in view of the prior art, citing the patent to Furrer, 1,810,825, June 16, 1931, and that of Uecker, 2,263,021, November 18, 1941, both of which are the property of appellant's assignee. From the decision of the board this appeal was taken.

The claims read as follows:

"8. A hot water storage tank or like container, comprising a generally cylindrical shell interiorly lined with a ceramic enamel coating, a convex head interiorly lined with a ceramic enamel coating and welded at its circumferential edge to one end of said shell, a protective ring disposed in the joint between the head and shell and having circumferentially and longitudinally extending areas on either side of said weld, pliable heat resistant gaskets provided between the circumferentially extending areas of the outer surfaces of the ring and the inner surfaces of the shell and head, lips on the ring to maintain the same between the head and shell, and a fusion butt weld securing the ring in the joint between the head and shell to tightly seal the joint and prevent circulation of fluid to the joint.

"14. A hot water storage tank or like container, comprising a generally cylindrical shell with its ends closed and made up of a plurality of longitudinal sections with at least one girth weld, said sections being lined to protect the same from corrosion, and said girth weld being a butt joint between opposed circumferential edges of adjacent sections and having deposited fused welding metal joining said edges, and a protecting member bridging said joint on the inside and sealed against the lining on opposite sides of the joint, the central portion of said member being integrally fused in said welded seam to secure the member in place.

"15. A hot water storage tank or like container, comprising a generally cylindrical shell with its ends closed, and made up of a plurality of longitudinal sections with at least one girth weld, said sections being lined with ceramic enamel to protect the same from corrosion, and said girth weld being a butt joint between opposed circumferential edges of adjacent sections

and having deposited fused welding metal joining said edges, and a protecting member bridging said joint on the inside and sealed against the ceramic enamel lining for a substantial distance on opposite sides of the joint, the central portion of said member being integrally fused in said welded seam to secure the member in place."

The claims were rejected on the Furrer patent in view of the Uecker patent. In his application appellant states that his device is a hot water tank with characteristics similar to those disclosed in the latter.

The reasons of appeal dispute the propriety of the decision below in rejecting the claims over the prior art.

The subject matter of the alleged invention may be readily understood from the claims. Claim 8 is the narrowest in that it defines a hot water tank "interiorly lined with a ceramic enamel coating" and provides for pliable heat resistant gaskets, while claim 14 omits the former of those limitations and claim 15 the latter.

The Furrer patent relates to a butt welded joint and a method of making it, particularly as applied to a joint between pipe sections. It appears that the sections brought together are belled for a short distance from either side of the groove which is formed by placing a "chill ring" inside the greater portion of the belled ends. Around the middle of the ring the wall is thickened into a kind of bead against which both ends of the sections are pressed. Thus a groove between the pipe ends is produced which is filled with fused metal welding the bead of the ring and the ends of the pipe together. The chill ring is tapered from the bead toward its ends for the purpose of permitting the belled ends of the pipes to be slid easily into position.

The patent to Uecker discloses a hot water tank with protective lining such as vitreous enamel insulating the interior against deterioration. It is formed in three sections, the top and bottom being outwardly extended to conform with a skirt-like outward extension of the shell proper. At the joint between the shell and other members which are welded together sheets of heat resistant material such as asbestos are placed.

The essence of the alleged invention resides in the joint between the shell and end portions of the device as defined by appellant.

Claim 8 was rejected for the reason that it was old in the art in view of the Uecker patent to line the interior of the tank with ceramic material and that to line the pipes disclosed in the Furrer patent with that material would not require invention if such lining were so desired. In the patent to Uecker the limitation of heat resistant material in the joint is disclosed. Therefore we are of opinion, as was held below, that it would not involve invention to insert the heat resistant material of the Uecker patent between the chill ring and inner surfaces of the pipe lengths of the Furrer device.

The broader claims 14 and 15 were rejected for the same reasons. Each of those claims describes a container with closed ends and a plurality of longitudinally lined sections welded together by at least one girth weld. It does not matter in a patentable sense whether or not the ends of the container be closed, for the reason that the formation of the joint is the thing with which appellant was concerned. The girth weld is clearly disclosed in the patent to Furrer, while the patent to Uecker shows its application to a container with closed ends, as well as a protective lining. We are of opinion that the tribunals of the Patent Office did not err in rejecting those claims.

Appellant in his brief contends that the Furrer patent is from a non-analogous art. The question whether the device of a reference is in a non-analogous art in our opinion has been properly discussed, as pointed out in the brief of the Solicitor, in the leading case of Potts v. Creager, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275. It seems to us that here the application of the joint formation of the Furrer patent would be obvious to one skilled in the art and in view of the reasoning in that case we cannot agree with appellant's contention.

Other matters have been suggested in the brief of appellant which we see no reason to discuss as they are entirely without the issue.

The decision of the Board of Appeals is affirmed.

Affirmed.

BLAND, Associate Judge (specially concurring).

I concur in the decision of the majority in affirming the action of the board in its

approval of the rejection of the appealed claims for the want of invention over the cited prior art.

The majority state, "Other matters have been suggested in the brief of appellant which we see no reason to discuss as they are entirely without the issue."

Appellant relies upon the decision of this court in In re Shortell, 142 F.2d 292, 296, 31 C.C.P.A., Patents, 1062, where we reversed the Patent Office upon the question of invention relating to a hack saw having teeth on both edges. We there held that it was not in the province of the court to establish new standards of invention since this would be judicial legislation rather than interpretation, and stated: "It follows, from the foregoing, that until Congress shall otherwise legislate, or the Supreme Court shall otherwise specifically hold, this court will continue to hold that if a process or thing constitutes patentable subject matter, is new and useful, and the process performed or thing produced would not be obvious to one skilled in the art, invention should be presumed and a patent may properly issue therefor."

Appellant states that the rejection of the claims involved in the instant appeal was made at a time of "considerable stress in the Patent Office following a number of decisions of other Courts which seemed to change the basis or standard of invention and prior to this Court's pronouncement above." He then argues in effect that, under former standards of invention, with respect to his particular combination, for various reasons assigned, he should be allowed the claims. He states that "the presumption of invention is in appellant's favor."

It is my personal view, and I speak here only for myself, that one whose claims have been denied in the Patent Office solely on the question as to whether or not the production of the article involved the inventive faculty has, if he sees fit, a right to urge in substance that he is the victim of an alleged changed standard of invention applied by the Patent Office.

I do not agree that in the instant case what appellant did amounted to any more than the exercise of mechanical skill even when he is given the benefit of all reasonable doubts.

Since appellant has the right to raise the question here, I see no impropriety in answering his contentions with respect thereto.

Throughout more than a century of development of the patent law, fundamental principles upon which the determination of the existence of invention rests have been developed and, on the whole, there has been little complaint, until recently, of any change of standard of invention with respect to which we are here concerned. It may be that certain tribunals in the Patent Office have recently sensed and been influenced by a disposition on the part of certain courts to change the standard of invention which has prevailed for so many years. However, I see no such attitude reflected in the instant record.

The pendulum of thought on subjects like this is prone to swing far in both directions and it would not be a matter of great surprise, in view of other attacks made on the patent system which to me are somewhat alarming, to learn that some applicants have been denied patents in recent days by virtue of a change in the standard of invention. This, if true, in part is due, of course, to the well-recognized fact that the term "invention" has never been, and doubtlessly never will be, satisfactorily defined by Congress or the courts. Necessarily it becomes a matter of individual opinion.

Patents are only prima facie evidence of invention and, as has been true for more than one hundred years, the equity courts, generally speaking, may be trusted, upon more complete records, to correct any mistakes made by the Patent Office in granting patents.

While I personally would deplore as extremely regrettable any attempt to undermine the basic, well-settled legal principles applicable to this particular question, I see no merit in appellant's contention on the instant record.

Since writing the above I am authorized to state that O'CONNELL, Associate Judge concurs in this concurring opinion.