36 C.C.P.A. (Patents)

Application of HENZE et al.

Patent Appeals No. 5577.

United States Court of Customs
and Patent Appeals.

April 12, 1949.

Frederic P. Warfield, of New York City,
for appellants.

W. W. Cochran, of Washington, D. C.
(H. S. Miller, of Washington, D .C., of
counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and
HATFIELD, JACKSON, O'CONNELL,
and JOHNSON, Judges.

JACKSON, Judge.

This is an appeal from a decision of the
Board of Appeals of the United States Pat-
ent Office, affirming a decision of the Pri-
mary Examiner, finally rejecting all of the
claims, 4, 5, 8, 10 to 12, inclusive, 14, and 15,
of an application, serial No. 506,492, filed
October 16, 1943, for a patent alleging new
and useful improvements in "control and
measurement of linear spacing in typewrit-
ing machines," on the ground that they fail
to define invention over the following prior
art: Crane et al., 2,151,191, March 21, 1939;
Ritterholz, 2,162,565, June 13, 1939; Ro-
berts, 2,192,330, March 5, 1940; Hausman,
2,205,289, June 18, 1940.

Claims 4 and 10 are illustrative of the
involved subject matter and read as follows:

"4. In a typewriting machine a control
means, operable independently of the es-
capement and printing mechanism, causing
lateral movement of the carriage to any de-
sired extent in either direction, in combi-
nation with a scale means measuring visibly
to the operator, when in position to operate,
the extent of such movement."

"10. In a typewriting machine, in com-
bination, a platen carriage mounted for lon-
gitudinal movement transversely of said ma-
chine, a rack carried with said carriage, an
escapement pinion meshing with said rack,
secondary teeth on said rack, a control gear
meshing with said secondary teeth, a shaft
carrying said gear mounted on the end of
said carriage, means for rotating said
shaft, a control member for such rotating
means within reach of the operator, and
a scale, visible to the operator, in position
to operate, with relation to which said
control means moves, all of said parts being
carried at one end of said platen carriage.

Claims 4, 5, and 12 were rejected as un-
patentable over the ·Hausman reference.
Claims 4 and 5 were also rejected upon the

patent to Crane et al., and all of the claims were further rejected on the patent to Roberts.

The alleged invention has to do with the control and measurement of linear spacing in typewriting machines. It is said that one of the objects of the claimed invention is the provision of mechanism by means of which the typist in operating the machine may change to the extent desired in either direction the relation between the printing point and the impression receiving surface and measure the extent of such change. Such means or mechanism is operated independently of the escapement means, the printing mechanism, and the key operations, and the operator by said control means is enabled to measure the linear space between any two points on the printing surface and set any desired number of letters or characters evenly into such space. The claimed structure may be applied to any kind of typewriting machine and used not only for the alteration of spacing between letters, but also for printing justification. Justification apparently means spacing between words and letters on a line in such a way as to obtain an even right hand margin. The drawings in the application disclose a conventional typewriter in which the carriage rack is connected to the platen carriage frame by studs passing through slots in the carriage rack. The cooperation between the studs and the slots permits movement in either direction to the length of the slots. In operation, to control the relative position of the platen carriage and the printing point independently of the escapement mechanism and key controls, the operator turns what is known as the operating lever in order to release a brake and moves the lever along a quadrant scale, the movements on which are shown to be magnified, and within the line of vision of the operator. When the lever is moved, operating gear, which is in mesh with the teeth at the end of the escapement, is turned at the lower end of a cooperating shaft and the gear moves along with said teeth while the platen carriage frame associated therewith will move to the extent above indicated.

. The patent to Crane et al. is for improvements in typewriting machines for "regulating and varying the spacing between the characters printed by the machine." It is shown in the drawings that instead of the rack member of the conventional machine, a long annular spring has been substituted which cooperates with the escapement mechanism. The spring is fixed to the carriage at one end by being passed through a hole in the carriage supported mandrel around which the spring is wound and to the end of a jack screw, motivated by a crank handle mounted in a bracket on the other end of the mandrel. When the crank is turned, the jack screw tensions the spring or allows it to contract and thus the desired spacing is obtained. A calibrated measuring scale is mounted over the jack screw element and cooperates with the spacing made by the turning of the jack screw.

The patent to Ritterholz is concerned with typewriting machines in connection with justification method and means in the operation of the machine. One of the objects is stated to be "the correction of words to a modified space in the line," and it is said that the device, which may be built into any standard typewriting machine, provides a readily usable guide designed to assist even the most inexperienced operator and also for ready production of line justification. The patentee in his structure discloses mechanism which moves jointly with the carriage and by imparting a rotary movement to a shaft situated on the right hand side of the machine, the platen and paper holding cylinders are moved longitudinally relative to the carriage, thus modifying the normal space used in a typewriter by the addition or subtraction of an amount proportionate to the distance in which the platen is shifted with respect to the carriage. The shaft, which is designed to have rotary movement, has on its front side, and in clear view, a circular handle for manually turning the shaft in either direction. The handle is of a dial type and contains calibrations for the representation of longitudinal adjustment of the platen supporting shaft and its associated parts.

The Roberts reference relates to line justifying mechanism for typewriters and the like, and it is said that the claimed

mechanism of the patent may be adapted to standard typewriters and other key operated machines. The drawings disclose an escapement rack which is so mounted that it is adjustable with relation to the carriage, by means of slots in the rack cooperating with guide pins on the carriage. The adjusting mechanism is supported on a bracket on one end of the carriage. The bracket is provided with a pair of forks between which there is a spindle slidably mounted. The spindle is prevented from rotating by means of a pin. On the spindle is a grooved collar which is engaged by another fork at the end of the escapement rack in such fashion that when the spindle is moved to the right, the escapement rack moves with it. The spindle may be slidably moved by means comprising a thread on the spindle cooperating with a thread in the bore of a beveled pinion and a further beveled pinion on a shaft which is turnable by means of a division setter comprising a knob and a disc part. Under the knob is the conical disc upon which is a scale for the purpose of indicating the distance of movement. It is clear to us from the drawing that when the said latter fork is placed midway between the other forks, relative movement between the carriage and the rack will take place in either a right or left direction. The control mechanism just described is in a vertical position and apparently at the right hand end of the typewriter.

The Hausman patent relates to improvements in line justifiers for typewriters or other key operated printing machines. It discloses a typewriting machine comprising the conventional platen carriage, designed for letter spacing and return movements. There is shown in the drawings a divided rack bar, the lower section of which is movable along its upper section, which is fixed to end arms on the carriage. The structure comprises a bell crank lever mounted on the carriage and operatively connected with the feed bar rack in such fashion that when the bell crank lever moves in a pivotal direction, the carriage moves relatively to the bar rack. A cam rail is mounted on the main frame of the apparatus and is adjustable by the rotating of an operating knob connected with the

end of the cam rail. There is a dial wheel disclosed in the structure for the purpose of determining the position of adjustment of the cam rail. It is stated in the specification, with respect to prior art practice, that "the justification takes place throughout the entire length of such line," and the specification then sets out the advantages obtained by the patentees structure of complete justification of each line within a portion thereof at the center or middle part of the printed line.

In rejecting claims 4, 5, and 12, the examiner held in his statement that it would not be inventive to set the cam rail of the Hausman structure in a neutral position and then to move it, after a letter spacing operation, to increase or decrease the space made by movement of the carriage.

In further rejecting claims 4 and 5 upon the Crane et al. reference, the examiner noted that a spring is provided in the structure of the patent as a substitute for the rack member and it cooperates with the escapement mechanism. He noted that when the handle of the jack screw of the patent is turned, the spring is tensed or contracted thus varying the spacing in the line, and also observed that a scale is provided in the patent structure for determining the position of adjustment.

In rejecting all of the claims as unpatentable over the Roberts' patent, the examiner in his statement held that there would be no invention in providing the rotary shaft, which is turned by the knob on top thereof in the device of Roberts, with a simple dial on the top thereof, in view of such a dial being shown in the Ritterholz patent.

■ During the prosecution of the application in the Patent Office, several affidavits were filed for the purpose of demonstrating that the device of appellants filled a long-felt want in the art. A careful examination of appellants' application would indicate the possibility of their having made an invention. However, as may be readily observed, the involved claims are drawn in very broad language, and for that reason it is clear to us they do not define anything patentable over the cited references, as applied by the tribunals of

the Patent Office. Those tribunals do not question the showing made in the affidavits with respect to the structure of appellants as to utility, operativeness, and commercial success.

Much stress is laid by counsel for appellants in his brief upon the affidavits, as showing that the structures disclosed in the references have not met with commercial success. It is trite, however, to say that even if such contention were true, it does not necessarily follow that the structure of the references may not be considered for their clear teaching. As an instance of appellants' argument, it is stated that the device of the Ritterholz patent is ineffective and "practically worthless" because of defects enumerated in one of the affidavits. It is clear, however, that in the structure of that patent there is a disclosure of an indicating dial, and that was the primary purpose for which that patent was cited.

We are not in agreement with appellants' contention that this case is on all fours with the facts in the case of In re Shortell, 142 F.2d 292, 31 C.C.P.A., Patents, 1062. We do not deem it necessary to distinguish between the facts in that case and the facts here involved. It is enough to say that they were entirely different, and further that in litigation of this kind, issues must be disposed of on the facts of record. In re Barsky, 62 F.2d 192, 20 C.C.P.A., Patents, 779.

■■ It is immaterial that the device in the Hausman patent can "accomplish none of the useful results of the present invention as set forth in the specification * * *." Claims for structure are only allowable because of structure clearly defined therein and not because of results obtained by means of their function. The claim must contain the definition of the invention. In re Hill et al., 158 F.2d 1001, 34 C.C.P.A., Patents, 783. Even though it be true that the structure of the Hausman patent, as stated in the brief of appellants, operates so that "line justification in Hausman is accomplished only through an intermediate zone within the line," there is nothing in any of the claims which requires justification or alteration of normal spacing anywhere in the line other than in an intermediate portion thereof.

It seems clear to us, as was held below, that the control means shown in the Hausman structure, comprising the operating knob and cooperating mechanism designed to accomplish justification, may be operated independently of the escapement and printing mechanisms. Therefore, we can not hold to the contrary, as contended for by appellants.

Why it is urged that the Hausman structure does not show a scale means is difficult to understand in view of the fact that there is a dial wheel in the device "to enable the operator to accurately determine the desired degree of adjustment of the intermediate cam rail section." Certainly that wheel is a scale means because on it is indicated the extent of movement of the justification means.

In their contention that the Roberts patent was improperly used as a reference against the involved claims, it is argued that in the Roberts structure the rack bar is moved along with the carriage, and that the examiner assumed that the rack is held in stationary position by means of the escapement mechanism. In that respect we must agree with the Board of Appeals in its holding that the involved claims are drawn in such broad fashion that they can not be interpreted as being limited to a typewriter in which the rack remains stationary while the carriage moves.

Even if it were correct, as contended by appellants, that the Roberts structure does not show a scale means, nevertheless the record here shows that the examiner relied upon the Ritterholz structure as teaching the use of such means as claimed. If the Ritterholz scale means were incorporated into the Roberts device, of course the structure would not be identical with that of appellants. Nevertheless, such scale measuring means, in our opinion, would be just as visible and readily available to the operator for the reason that it would be on top of the regulating device. Furthermore, it is stated in the specification of the Roberts patent that "It is to be observed

that the setting mechanism is visible to the operator, thus facilitating accuracy and ease of manipulation."

We have no doubt in view of what has been hereinbefore set out with respect to the structure of the Roberts device, that, contrary to the contention of appellants, it may be operated in either direction. Furthermore, that patent teaches that the device may be so operated as to cause lateral movement of the carriage in either direction to any desired extent, in the statement, "In accordance with the present invention, the escapement rack is adjustable lengthwise of the carriage whereby to increase or decrease the width of the spacing."

There is no discussion in the brief of appellants with respect to the alleged error by the Board of Appeals as to the want of invention in the use of secondary teeth on the rack and a cooperating gear to move the rack, as set out in claim 10. Therefore, we must assume that reason for appeal has been abandoned. In re Krasnow et al., 166 F.2d 196, 35 C.C.P.A., Patents, 939, and In re McCabe, 90 F.2d 111, 24 C.C.P.A., Patents, 1224.

For the reasons that have been hereinbefore set out, the decision of the Board of Appeals is affirmed.